666 So.2d 506 (1995)
H. Ted CAIN
v.
MISSISSIPPI STATE DEPARTMENT OF HEALTH and Bay St. Louis Residential Care Center, Inc.
No. 92-CC-00822-SCT.
Supreme Court of Mississippi.
December 14, 1995.
*507 Barry K. Cockrell, Watkins Ludlam & Stennis, Jackson, for appellant.
Michael C. Moore, Attorney General, Rebecca L. Thames, Sp. Ass't Attorney General, Dorian E. Turner, Brunini Grantham Grower & Hewes, Edmund L. Brunini, Jr., Brunini Firm, Jackson, for appellees.
Before DAN M. LEE, C.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
H. Ted Cain ("Cain") appeals from a decision of the Chancery Court of the First Judicial District of Hinds County, Mississippi, affirming the Final Orders of the State Health Officer denying him a Certificate of Need ("CON") for the construction of a 60-bed nursing home in Hancock County, Mississippi, and approving a competing CON application of Bay St. Louis Residential Care Center, Inc. ("Bay St. Louis"). Feeling aggrieved, Cain perfected this appeal, raising the following issue for review:
WHETHER THE DEPARTMENT OF HEALTH'S FINAL ORDERS APPROVING THE CERTIFICATE OF NEED APPLICATION OF BAY ST. LOUIS RESIDENTIAL CARE CENTER, INC. AND DISAPPROVING THE CERTIFICATE OF NEED APPLICATION OF H. TED CAIN WERE SUPPORTED BY SUBSTANTIAL EVIDENCE, OR CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Finding the decision of the Mississippi State Department of Health to be supported by substantial evidence and to be neither arbitrary nor capricious, we affirm.

PROCEDURAL HISTORY
Prior to providing nursing home care, a person wishing to offer such services must file an application and be granted a Certificate of Need ("CON") by the Mississippi State Department of Health ("MSDH"). See Miss. Code Ann. § 41-7-171  § 41-7-209 (Supp. 1995). On June 1, 1990, H. Ted Cain d/b/a Hancock County Nursing Home ("Cain") and Bay St. Louis Residential Care Center, Inc. ("Bay St. Louis") both submitted CON applications for the construction of a 60-bed nursing home in Hancock County, Mississippi. Because state law only authorizes one such nursing home in Hancock County, the MSDH could not approve both CON applications. See Miss. Code Ann. § 41-7-191(2)(w). The State Health Officer, in a decision dated September 26, 1990, found that both Cain and Bay St. Louis were in substantial compliance with the 1989 State Health Plan and Miss. Code Ann. § 41-7-191(2)(m). However, he found that
by way of comparative analysis, substantial evidence demonstrates that the Bay St. Louis proposal not only meets all of the criteria, but is superior in substantial respects to that of Hancock County Nursing Home [Cain] in its competition for the one 60 bed facility authorized by the Legislature for approval in Hancock County, Mississippi.
Cain appealed to the Hinds County Chancery Court, both the MSDH's Final Order approving Bay St. Louis's CON application and its Final Order denying his own application. A Motion to Consolidate was filed on November 14, 1991. The two causes were subsequently consolidated. On April 8, 1992, pursuant to an ore tenus motion by Bay St. Louis, an order was filed permitting Bay St. Louis to intervene in the appeal to the chancery court.
The chancellor issued a written opinion in the matter on May 14, 1992. Final judgment was entered on July 13, 1992, affirming the Final Orders of the MSDH whereby a CON was awarded to Bay St. Louis and Cain's *508 CON application was denied. Thereafter, Cain perfected an appeal to this Court.

STATEMENT OF FACTS

A. CAIN'S APPLICATION
At the time Cain applied for the CON in question, he was the owner of Hotel Reed Nursing Center, an 88-bed nursing facility in Hancock County, and he held a valid CON for the construction of the Hancock County Health Care Facility ("HCHCF"), a 40-bed, private-pay nursing facility to be built as part of a life care retirement facility in Hancock County. That CON was due to expire October 20, 1990.
Cain also proposed to construct, as part of the life care retirement facility, a 60-bed nursing home with the proposed name of Hancock County Nursing Home. It is this facility that concerns us here. In his CON application, Cain gave the following justification for the project:
By being developed in close proximity to the new life care retirement facility, the nursing home will complement the health care services to be offered at the facility. Specifically, the 60-bed nursing home proposed in this application will be certified for participation in both the Medicare and Medicaid programs. Since the 40-bed skilled nursing component of the life care retirement facility is prohibited from participating in the Medicaid program, the development of an adjacent, Medicaid-certified nursing home will allow a full and complete range of long-term care services to be furnished on a single campus.
Cain's CON application reflects that the proposed facility would consist of 19,212 square feet of space to include 29 semi-private rooms and three private rooms at a cost of $879,444. The Hancock County Nursing Home would be on the grounds of the life care retirement facility and be connected to the 40-bed HCHCF by a walkway. The Hancock County Nursing Home would share certain services with the HCHCF. Upon a request by the MSDH to provide additional information concerning the shared services, Cain responded:
The applicant intends, to the extent permitted by applicable law, to share services with the Hancock County Health Care Facility. The 60-bed nursing home will have and offer all personnel, dietary services, social services, recreational and other services, required by law. To the extent that the sharing of such services with the Hancock County Health Care Facility is determined to be cost effective, appropriate and authorized by law, the applicant intends to establish such arrangements.
Cain's proposal called for food to be prepared in the kitchen of the HCHCF and delivered to the Hancock County Nursing Home. Cain indicated that these costs were included in the projected operating costs. A letter was submitted by the architects for the HCHCF which indicates the kitchen in that facility would be sufficient to accommodate the needs of both the HCHCF and the Hancock County Nursing Home.
Cain's application indicated that there would be no expenditures for land or site preparation as it would be on the same site as the 40-bed HCHCF and the capital expenditure approved in the CON for the HCHCF included land and site preparation costs. Cain provided the following breakdown of the estimated capital expenditures:

 &rtrif; Construction $710,844.00
 &rtrif; Fixed Equipment 30,000.00
 &rtrif; Non-Fixed Equipment 48,000.00
 &rtrif; Land 00.00
 &rtrif; Site Preparation 00.00
 &rtrif; Fees (Architect, Consultant) 39,072.00
 &rtrif; Contingencies 36,528.00
 &rtrif; Capitalized Interest 15,000.00
 ___________
 Total $879,444.00
 ___________

The estimated costs reflects a construction cost of $43.28 per square foot and a cost per bed of approximately $14,657.
Cain projected 95% occupancy during the first year of operation and 99% occupancy during the following two years. He estimated 85% would be Medicaid patients and 5% Medicare patients with the remaining 10% being private pay. Cain projected a profit of $90,052 during the first year of operation and profits of $102,982 and $107,497 respectively during the second and third years of operation. *509 The Division of Medicaid did not oppose the approval of Cain's CON application. The Division of Medicaid projected that at a 95% occupancy rate with 85% Medicaid patients and a projected rate of $53.97 per patient day there would be an annual cost to the Medicaid program of $954,348. Cain estimates a cost per patient day for the first year of operation of $38.27.

B. BAY ST. LOUIS'S APPLICATION
Bay St. Louis Residential Care Center, Inc. ("Bay St. Louis") also applied for a CON to construct a 60-bed nursing home adjacent to its 54-bed personal care facility in the city of Bay St. Louis in Hancock County, Mississippi. Bay St. Louis is a closely held, for profit, Mississippi corporation. Roger E. Jacobson, president and one-third owner of Bay St. Louis was a resident of Manitowoc, Wisconsin. Jacobson also owned all or part of at least five other health care facilities in Mississippi or the companies that managed them.
In its CON application, Bay St. Louis stated it justified its facility in part as follows:
The objective of this project is to provide a quality nursing home to the citizens living in its service area. At the present time, there is only one nursing home provider in Hancock County. This project will allow the local citizens a choice in health care providers they do not have at this time. The project will also provide Medicare Services which are not presently available in Hancock County. The location of the project next to a Personal Care Home will allow residents use of this level of care if they are able to function at an RCF level. Further, a spouse placing their loved one in the nursing home would have the option of living next door at the personal care home. The project would work with the local hospital and home health agencies in providing a wide spectrum of services.
Bay St. Louis proposed to construct a 60-bed skilled nursing facility, consisting of 24,000 square feet and supporting 56 semi-private beds, 3 private beds and 1 isolation bed. Bay St. Louis estimated a capital expenditure of $1,491,000. Bay St. Louis gave the following breakdown of estimated project costs:

 &rtrif; Site (12 acres) $ 75,000.00
 &rtrif; Site Preparation 45,000.00
 &rtrif; Building & Site Construction 1,100,000.00
 &rtrif; Major Kitchen Equipment 45,000.00
 &rtrif; Major Laundry Equipment 15,000.00
 &rtrif; Furniture & Equipment 110,000.00
 &rtrif; Architect-Engineering 66,000.00
 &rtrif; Contingencies 35,000.00
 _____________
 Total $1,491,000.00
 _____________

The estimated capital expenditure reflects a construction cost of $54.42 per square foot and a cost of approximately $23,600 per bed.
Bay St. Louis projected a 54% occupancy rate and a $249,545 loss during the first year of operation and a 98% occupancy rate with profits of $61,183 and $80,534 respectively during the following two years. Bay St. Louis also estimated that 63% of the beds would be utilized by Medicaid patients, 3% by Medicare patients and the remaining 34% by private-pay patients. The Division of Medicaid did not oppose the project. It estimated that at 98% occupancy with a projected 62.71% Medicaid utilization and a projected rate of $53.97 per patient day, the one-year cost to Medicaid would be $726,319.

C. STAFF ANALYSIS AND RECOMMENDATION
The MSDH conducted an analysis of both CON applications in accordance with Miss. Code Ann. § 41-7-191, (1)(a), (1)(d)(viii), (2)(a), and (2)(m), and adopted rules, procedures, plans, criteria and standards of the MSDH. The staff analysis indicated that both Cain and Bay St. Louis's applications were in "substantial compliance with the criteria and standards for nursing home beds as contained in the 1989 State Health Plan and the updated projections of nursing home bed need for the LTCPD [Long Term Care Planning District] and county." However, the staff recommended approval of Bay St. Louis's application and disapproval of Cain's application. In the "Conclusions and Recommendation" *510 section of its analysis of Bay St. Louis's application the staff stated:
The application is competing with another application which also proposed to construct a 60-bed nursing home in Hancock County. Only one 60-bed Certificate may be granted to comply with the statutory authorization.
This application provides greater assurance of financial feasibility/economic viability (criterion 4, CON Manual, 1988) and based upon utilization projections would result in a lower cost to Medicaid. Finally, competition and access are enhanced with more than one provider of nursing home care in the same area.
The Division of Planning and Resource Development recommends approval of this application submitted by Bay St. Louis Residential Care Center, Inc., which precludes the approval of the application submitted for H. Ted Cain, dba Hancock County Nursing Home.
The final decision of the State Health Officer, after a comparative analysis of the two applications, was to approve Bay St. Louis's CON application which precluded the approval of Cain's application.

STANDARD OF REVIEW
Any party feeling aggrieved by a final order of the MSDH may appeal to the Chancery Court of the First Judicial District of Hinds County, Mississippi, and subsequently to this Court. The Court's standard of review, however, is limited. Miss Code Ann. § 41-7-201(2)(f) (1993) provides in part:
The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.
Accordingly, this Court will not reverse unless the agency's decision was arbitrary or capricious. See Delta Med. Ctr. v. Greenwood Leflore Hospital, 609 So.2d 1276, 1277 (Miss. 1992); HTI Health Services v. Dept. of Health, 603 So.2d 848, 851 (Miss. 1992); Dept. of Health v. S.W. Miss. Med. Ctr., 580 So.2d 1238, 1239 (Miss. 1991).

DISCUSSION
Cain contends that the MSDH's decision approving Bay St. Louis's CON application and disapproving his CON application was not supported by substantial evidence and was, in fact, against the manifest weight of the evidence and should be reversed. Both the MSDH and Bay St. Louis argue that under the arbitrary and capricious standard of review of administrative agency decisions this case must be affirmed because of substantial evidence in the record indicating the superiority of Bay St. Louis's application.
Cain argues that the MSDH's decision was based on the Department's opinion that Cain should not be entitled to construct more than one nursing home at a time and therefore it concocted reasons to deny his application. Cain contends that there was absolutely no evidence to support the Department's finding that Bay St. Louis's application provided greater assurance of financial feasibility and economic viability and a lower cost to Medicaid. Cain states that his application reflected a (1) lower capital expenditure, (2) lower projected operating cost, (3) lower cost per patient day, (4) lower cost per bed, (5) lower cost per square foot, and (6) lower cost of interest over the life of the project. All of these projections were addressed by the State Health Officer in his decision.
The MSDH has the authority to develop and establish criteria for granting CONs and to objectively review the information submitted in applications. See Miss. Code Ann. §§ 41-7-187, 41-7-189 (1993). See also, S.W. Miss. Med. Ctr., 580 So.2d at 1240. In the case sub judice, a staff analysis was done on each application. The staff analyses summarized the projects, set out the type of review required and then evaluated the applications pursuant to the State Health Plan and other adopted criteria, including, but not limited to, need, Medicare participation, economic viability, accessibility, quality of care and financial feasibility. The *511 analyses along with the staff conclusions and recommendations were then submitted to the State Health Officer. The State Health Officer, after reviewing all submitted information, including Cain's "Response to Staff Analysis," set out his findings and conclusions and made the ultimate decision to disapprove Cain's CON application and to approve Bay St. Louis's.
The State Health Officer, in his decision denying Cain's CON application, found:
7) ... the staff findings and conclusions with reference to the substantive analysis and the comparative analysis are adopted. In addition, the State Health Officer finds that the following demonstrate that the Bay St. Louis application comports with both the letter and spirit of the Health Care Criteria and Standards to a greater extent than does Hancock County [Cain]:
a. That both applicants have widespread community support.
b. The projected operating expenses for the proposed Bay St. Louis project are more realistic and comparable with current operating expenses for a 60 bed nursing home than the projected operating expenses reported for Hancock County.
c. The projected occupancy rate for Hancock for the first year of operation (95 percent) appears unreasonable, overstated and over-optimistic, due to the fact that the facility will be located adjacent to and operating in conjunction with a 40-bed nursing home. (The 40 bed nursing facility, which is being constructed as part of a life care retirement facility, was issued a Certificate which will expire October 20, 1990.)
d. The Applicant's [Cain's] operating costs appear to be significantly understated and gross patient revenue overstated in comparison to other 60 bed nursing facilities. True financial feasibility could not be accessed by staff.
e. Staff could not substantiate the financial position of H. Ted Cain, as sole proprietor, to sustain the implementation of this project. Unaudited financial statements submitted with the application, as supporting evidence that sufficient cash was available to cover start-up costs, showed that Hotel Reed's (an 88 bed nursing home owned by H. Ted Cain) financial liabilities exceed its assets. (The same unaudited financial statements as regards Hotel Reed were submitted for the 40 bed facility.)
f. The instant project for Hancock County included no land acquisition or site preparation costs; no kitchen or related equipment costs; and no provision for recreational services within the physical facility, which significantly lowers the capital expenditure for the project. These costs/services are tied to the construction of the 40-bed nursing facility, whose CON expires October 20, 1990.
The Applicant under-estimated the construction costs for this project in comparison to construction costs of other nursing facilities of this size. This under-estimation results in lower depreciation and interest.
8) And finally, the Division of Medicaid projects higher costs to the Medicaid program for the Hancock County project than for the Bay St. Louis project. .. .
This case differs from the denial of CON cases which this Court normally reviews. In the case at bar there are two applications which both substantially comply with the 1989 State Health Plan and certain other CON criteria. If there was not a state law permitting only one such application to be approved, the MSDH's decision to deny Cain's application might have been arbitrary and capricious. That is not the case here, however. By state law the MSDH could grant only one CON for a 60-bed nursing home in Hancock County. For that reason, one or both of the applications submitted by Cain and Bay St. Louis would have had to have been denied. The State Health Officer did the only thing he could by conducting a comparative analysis of both applications. After conducting this comparative analysis he determined Bay St. Louis's application to be superior and approved its CON application, thereby precluding the approval of Cain's application. The record supports this decision.

*512 CONCLUSION

The decision of the MSDH to approve Bay St. Louis's CON application and to disapprove Cain's application was supported by substantial evidence and was neither arbitrary nor capricious. For the foregoing reasons, this case is affirmed.
JUDGMENT IS AFFIRMED.
DAN M. LEE, C.J., SULLIVAN, P.J., and PITTMAN, BANKS, McRAE, SMITH and MILLS, JJ., concur.
PRATHER, P.J., not participating.