# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-SA-01239-SCT

*ST. DOMINIC-JACKSON MEMORIAL HOSPITAL*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH*
*AND RIVER OAKS HOSPITAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2004 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | KATHRYN RUSSELL GILCHRIST |
| | EDMUND L. BRUNINI |
| | DAVID WELDON DONNELL |
| ATTORNEYS FOR APPELLEES: | SARAH E. BERRY |
| | BARRY K. COCKRELL |
| | JENNIFER CLARE EVANS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2004-SA-01241-SCT

*ST. DOMINIC-JACKSON MEMORIAL HOSPITAL*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH*
*AND RIVER OAKS HOSPITAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2004 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |

ATTORNEYS FOR APPELLANT:    KATHRYN RUSSELL GILCHRIST
    EDMUND L. BRUNINI
    DAVID WELDON DONNELL

ATTORNEYS FOR APPELLEES:    SARAH E. BERRY
    BARRY K. COCKRELL
    JENNIFER CLARE EVANS

NATURE OF THE CASE:    STATE BOARDS AND AGENCIES
DISPOSITION:    AFFIRMED - 09/15/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.    St. Dominic-Jackson Memorial Hospital (St. Dominic) appealed the final orders of the Mississippi Department of Health (Department) granting River Oaks Hospital's (ROH) two separate applications for a certificate of need (CON) for the addition of acute care beds at its facility and a CON for renovation and expansion of its facility.    The Chancery Court of the First Judicial District of Hinds County heard St. Dominic's two separate appeals and affirmed the Department's decisions.  St. Dominic now appeals to this Court.

## FACTS

¶2.    ROH filed two separate applications of CON with the Department.[1]    The first application addressed ROH's need to renovate 27,300 square feet of the facility, including diagnostic imaging and cardiopulmonary services, and to construct an additional 162,000

---

[1] ROH also owns Woman's Hospital (Woman's).

2

square feet for a new emergency services department and additional medical office space. The second application requested an additional 90 acute care beds.

¶3. The Department deemed the expansion application complete and reviewed it during the January 2003 review cycle. The Department's Staff (Staff) requested additional information on the bed application. St. Dominic and Mississippi Baptist Medical Center (Baptist) filed written comments with the Department objecting to the bed application. The Staff issued a letter to ROH regarding whether it considered relocating some of its unused beds from Woman's Hospital. ROH issued letters in response to the comments.

¶4. The Staff issued findings that both CONs were in compliance with all applicable criteria, standards and goals of the *Mississippi State Health Plan* and the *Mississippi Certificate of Need Review Manual* (CON Review manual). The Department recommended that the total number of new beds be reduced from 90 to 57 and 33 beds relocated to ROH from Woman's. Baptist did not express any further comment or objection to ROH's applications. St. Dominic requested a public hearing on both applications. St. Dominic requested the two applications be consolidated at the administrative hearing. Hearing Officer David K. Scott granted the consolidation of the hearings. The hearing on the bed and expansion applications was held over the course of seven days. ROH presented twelve witnesses: two expert witnesses, five physicians and four members of ROH's administration. Harold Armstrong, Chief of Health Planning at the Department, testified in favor of both applications. St. Dominic presented a health planning expert.

¶5. Subsequence to the hearing, the Hearing Officer issued a findings of fact and conclusion of law and recommendation. The Hearing Officer recommended in his report that the facility

expansion application and the bed addition application be approved. The Hearing Officer recommended the reduction to 81 acute care beds consisting of 48 new beds at ROH and 33 beds from Woman's relocated to ROH.

¶6.     The State Health Officer, Dr. Brian W. Amy, concurred with the recommendation of the Hearing Officer. The State Health Officer entered a final order approving ROH's facility expansion application. In a separate order, the State Health Officer approved ROH's bed addition application with a reduction from 90 to 81 acute care beds, consisting of 48 new beds and 33 acute care beds relocated from Woman's to ROH.

¶7.     Pursuant to Miss. Code Ann. § 41-7-201, St. Dominic appealed both final orders to the Chancery Court of the First Judicial District of Hinds County, Mississippi. Chancellor William H. Singletary was assigned the appeal regarding the bed application. He upheld the Department's decision and approval by reduction.[2]   In his ruling, Chancellor Singletary stated:

> [I]t is the cumulative impact of all of the evidence, testimony, statistics and documentation offered by witnesses over the course of seven days that fully substantiates the award of 81 beds to River Oaks ...[T]he decision of MSDH [Department] was not based upon a single statistic or assertion; the decision was a thoughtful and reasoned response to a voluminous amount of evidence. The decision was supported by substantial evidence and was not arbitrary or capricious.

He found that ROH had sustained a 70 percent occupancy  and established the need for 81 acute care beds. He further relied on evidence of ROH's current and projected occupancy levels, the consultant's recommendation and the growth of its ancillary services.

---

[2]Chancellor Singletary issued an opinion of the Court. Chancellor Stuart Robinson executed the final judgment affirming the Department's final order regarding the addition of 81 acute care beds.

¶8.     Chancellor Patricia D. Wise heard ROH's expansion application and concluded that this Department's approval of ROH's application should not be disturbed.  She issued an opinion and order of the court which identified three basic components of the expansion application: (1) the relocation and expansion of the emergency department; (2) the renovation and expansion of the imaging department; and (3) the construction of a medical office building (MOB).  She further relied on the growth of the ancillary departments substantiating the need for the first two components and the physicians' testimony for support of a need for the MOB. She concluded that there was "more than substantial evidence to support the [Department's] Final Order," and that "[t]he overwhelming weight of the evidence presented demonstrates the need for the proposed project."

¶9.     St. Dominic now appeals both chancery court judgments to this Court.  This Court consolidated both appeals for review.  St. Dominic raises the following issues:

> **I.      Whether substantial evidence supported ROH's CON for the addition of 81 acute care beds and supported substantial compliance with the applicable criteria and standards in the *Mississippi State Health Plan* and the *Mississippi Certificate of Need Review Manual.***
>
> **II.     Whether substantial evidence supported ROH's CON for the renovation and expansion of its facility and supported substantial compliance with the applicable criteria and standards in the *Mississippi State Health Plan* and the *Mississippi Certificate of Need Review Manual.***

**DISCUSSION**

¶10.    While the State Health Officer's CON order is subject to review, judicial review is limited by statute.  Miss Code Ann. § 41-7-201(2)(f) provides:

The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.

¶11. This Court assigns great deference to decisions of administrative agencies. *Delta Reg'l Med. Ctr. v. Miss. State Dep't of Health,* 759 So.2d 1174, 1176 (Miss. 1999) (citing *Melody Manor Convalescent Ctr. v. Miss. State Dep't of Health,* 546 So.2d 972, 974 (Miss. 1989)). There is a rebuttal presumption in favor of the decision rendered by an agency. *His Way Homes' Inc. v. Miss. Gaming Comm'n,* 733 So.2d 764, 767 (Miss. 1999) (citing *Sprouse v. Miss. Employment Sec. Comm'n.,* 639 So.2d 901, 902 (Miss. 1994)); *Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors,* 621 So.2d 1211, 1216 (Miss. 1993). "[T]he burden or proving to the contrary is on the challenging party." *Id.* This Court, as well as, the chancery court, cannot "substitute its judgment for that of the agency or reweigh the facts of the case." *Id.*

¶12. Our constitution does not allow for the courts to conduct a de novo retrial of matters on appeal from administrative agencies. *Cook v. Mardi Gras Casino Corp.,* 697 So.2d 378, 380 (Miss. 1997). That is, the judiciary is not permitted to make administrative decisions. *Id.* Therefore, this Court has established a strict limitation pursuant to Miss. Code Ann. § 41-7-201(2)(f) for appellate review.

¶13. In *Miss. State Dep't of Health v. Natchez Community Hosp.,* 743 So.2d 973, 977 (Miss. 1999), this Court stated "it is within the power of the chancellor to reverse the decision

6

to grant the CON if such decision was not supported by substantial evidence. Substantial evidence means more than a scintilla or a suspicion."

¶14.  To be reversed on appeal, an administrative agency's decision must be demonstrated to be arbitrary and capricious and not based on substantial evidence. *See id.; See also Cain v. Miss. State Dep't of Health,* 666 So.2d 506, 510 (Miss. 1995); *Delta Med. Ctr. v. Greenwood Leflore Hosp.,* 609 So.2d 1276, 1277 (Miss. 1992). This Court in *Miss. State Dep't of Health v. S.W. Miss. Reg'l Med. Ctr.,* 580 So.2d 1238, 1239 (Miss. 1991), held that "[t]he terms 'arbitrary' and 'capricious' are open-textured and not susceptible of precise definition or mechanical application." *See HTI Health Servs. of Miss., Inc. v. Miss. State Dep't of Health,* 603 So.2d 848, 851 (Miss. 1992).

¶15.  In *Attala County Board of Supervisors v. Miss. State Dep't of Health,* 867 So.2d 1019, 1023-24 (Miss. 2004), this Court adopted the following definitions:

> "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, - absolute in power, tyrannical, despotic, non-rational, - implying either a lack of understanding of or a disregard for the fundamental nature of things.
>
> "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles...." *HTI Health Services,* 603 So.2d at 851 (quoting *S.W. Miss. Med. Ctr.,* 580 So.2d at 1239).

## I.  Bed CON Application

7

¶16.   St. Dominic argues the Department's finding that ROH needed 81 additional beds was not supported by substantial evidence. The Staff issued a detailed, multi-paged staff analysis dated May 2003 outlining ROH's CON application for additional acute care beds at it's facility. The Staff reviewed the plan's conformance with the *Mississippi State Health Plan* (SHP), stating in pertinent part as to the criterion need, as follows:

> The Plan stipulates that an applicant shall document the need for the proposed project. In addition, the applicant proposing to add hospital beds shall document that the facility has maintained an occupancy rate of at least 70 percent for the most recent two (2) years.
>
> The applicant submits that River Oaks Hospital has experienced explosive growth during the four most recent years. This growth has impacted all departments of the hospital including radiology, inpatient and outpatient surgery, obstetrics, the neonatal intensive care unit, emergency services and therapy.
>
> River Oaks attributes the growth and utilization of facilities and services at the hospital to the following reasons:
>
> - The addition of 36 new physicians to the hospital's medical staff since December 1, 1999;
>
> - The institution of new services, treating patients with higher acuity and utilizing more sophisticated and complicated procedures and equipment, such as diagnostic cardiac catheterization and angiography at the Facility;
>
> - The provision of higher acuity services by River Oaks Hospital has resulted in the average length of stay for patients increasing, thereby increasing the utilization of acute care beds;
>
> - Between 1990 and 2000, the population of Rankin County grew by 32.3 percent to 110,738 and is expected to grow to approximately 143,462 residents by 2010;
>
> - The hospital's emergency services department, which directly drives utilization of inpatient, acute care services, has experienced continued and steady growth; and

8

- The 44 percent increase in the number of deliveries, which results in greater utilization of acute care and neonatal intensive care beds.

The applicant submits that the average daily census at River Oaks Hospital has increased from 68 patients per day in Fiscal Year 1999 to 85 patients per day in Fiscal year 2002. As a result of this increase, River Oaks Hospital has exceeded 70 percent occupancy for the past 2 fiscal years. As shown on page one of this staff analysis, River Oaks maintained an average occupancy rate of 73.53 percent for Fiscal Year 2001, and a preliminary average occupancy rate of 77.39 percent for Fiscal Year 2002.

River Oaks utilized a linear regression analysis of the actual, historical total patient days for FY 1999 through FY 2003 to project future values ...

Applicant submits that if the hospital does not add acute care beds, this increase in utilization would result in the facility reaching a 111 percent average occupancy rate within this seven (7) year period ...

Applicant further submits that as an operator of a very high volume surgical department, River Oaks experiences extreme variations in inpatient census.

\* \* \*

Applicant submits that beyond the expected natural growth rate based on historical utilization, River Oaks is expected to experience additional increases as a result of (1) the addition of new physicians to the medical staff; (2) the increase of the average length of stay ("ALOS") for patients due to the hospital's treatment of higher acuity patients; (3) the natural effect of Rankin County's population growth, and (4) the impact of an expanded and growing emergency services department.

Effect of Additional Medical Staff. Applicant states that it has experienced success in recruiting new physicians to its medical staff due to its commitment to quality patient care, its location in rapidly growing Rankin County, and the addition of expanded, conveniently located office space. The hospital anticipates continued growth, especially in the practice area of obstetrics and gynecology. The addition of new OB/GYNs to the hospital staff will also bring added utilization of the facility, both in ancillaries such as imaging and surgery, as well as in acute care services.

Growth in Average Length of Stay. In recent years the hospital has implemented more complex services such as diagnostic cardiac catheterization and angiography while adding specialists treating neurological problems and more

9

advanced cardiology symptoms.  As a result, River Oaks Hospital expects the average length of stay for its patients to increase.

Applicant submits that in FY 2002, River Oaks experienced an ALOS of 4.21. If the ALOS were to increase by .03 per year from Fiscal Year 2002 to Fiscal Year 2008, the hospital would experience an increase of 1,900 patient days per year by FY 2008.

Effect of Rankin County's Population Growth.  Rankin County's 2005 population projection is 129,142 ... expected to grow to 143,462 by 2010 ...

Applicant submits that in FY 2002, River Oaks experienced 31,108 patient days of acute care utilization, while Rankin County had a projected population of 114,010.  As a result, the hospital provided approximately 272.54 patient days per 1,000 residents.  Advancing this methodology, River Oaks expects to experience an additional 5,933 patient days per year by FY 2008 as a result of the population growth.

Impact of Growing Emergency Services Department.  Emergency visits increased at River Oaks from 15,715 in FY 2000 to 17,470 in FY 2002.  If this same growth were to continue, River Oaks anticipates servicing approximately 22,7341 patients by FY 2008.

In FY 2002, 15.4 percent of all emergency department visits resulted in an inpatient visit, generating, in that year, approximately 11,326 patient days for the hospital.  If the current growth continues, the applicant expects that the emergency department utilization will further impact the facility's utilization.

Impact of Continued Growth of Obstetrical Services.  Applicant submits that between FY 2000 and FY 2002, River Oaks recognized an explosive increase in obstetrical utilization growing from 1,307 deliveries in FY 2000 to 1,887 in FY 2002.  If this 15 percent growth continued, within three years almost 3,000 deliveries will occur at the hospital ...

Based on anticipated growth in medical staff, ALOS and population, River Oaks projects a cumulative increase in patient days of approximately 10,233 per year by FY 2008.  As a result, applicant states the hospital can potentially experience an average daily census exceeding 150 within three (3) years of the full complement of acute care beds being implemented.  Even with the addition of the requested 90 acute care beds, applicant states that the facility could face occupancy rates in the high 70 percent range.

In addition to the statistical analysis provided, the hospital presented subjective substantiation for the need for expanded capabilities at River Oaks through quotes of six (6) physician member of East Lakeland OB-GYN Associates, PA, the Flowood mayor, and by three (3) physician members of Woman's Health Associates, PLLC.

¶17.   The Staff further reviewed the application following that the *Mississippi Certificate of Need Review Manual* which addresses general criteria by which CON applications are reviewed.   The Department in General Requirement (GR) Criterion 3- Availability of Alternatives addressed the comments received from St. Dominic and Baptist suggesting relocation of beds rather than additional beds.   The Department considered ROH's response and proposal to modify its application by reduction to "(a) [r]educe the requested number of new acute care beds from 90 to 57; and (b) [r]elocate 33 acute care beds from Woman's Hospital to River Oaks Hospital."

¶18.   At the conclusion of its analysis, the Staff recommended the addition of 90 acute care beds, by reduction to 57 new acute care beds and the relocation of 33 acute care beds from Woman's.  In rendering its recommendation, the Staff concluded:

> This project is in substantial compliance with the criteria and standards for renovation and addition of hospital beds, as contained in the FY 2003 *State Health Plan,* the *Mississippi Certificate of Need Review Manual,* 2000 revisions, and all adopted rules, procedures, and plans of the Mississippi State Department of Health.

> The applicant has adequately documented the need for the proposed project, based on growth and utilization of facilities and services and an occupancy rate in excess of 70 percent for the most recent two years.  Opposition to the project alluded to the over bedded hospital service area, for which applicant responded with a willingness to accept modification of the project by reduction.

¶19. Baptist did not express any further opposition. St. Dominic, however, requested a public hearing.[3] A hearing was conducted to review the CON application "for their compliance with the Mississippi State Health Plan and the Mississippi CON Review Manuel, 2000, and all adopted rules, procedures and plans of the Mississippi State Department of Health." Following the public hearing, the Hearing Officer issued his findings of fact and recommendation.

¶20. The Hearing Officer found that ROH's CON application for additional acute beds should be approved. However, the Hearing Officer found that 81 additional acute care beds, consisting of 48 new acute care beds at ROH and 33 acute care beds relocated from Woman's to ROH would satisfy ROH's need. The Hearing Officer examined ROH's need for the additional acute care beds, concluding as follows:

¶21. With respect to the bed addition application, Criterion 1(b) applies and provides:

Projects which involve the addition of beds: The applicant shall document the need for the proposed project. In addition to the documentation required as stated in Need Criterion (1)(a), the applicant shall document that the facility is question has maintained an occupancy rate of at least 70 percent for the most recent two (2) years.

River Oaks presented evidence to show that it has exceeded 70% occupancy of its current licensed bed capacity for more than two years. In fact, for FY 2003, River Oaks had an average daily occupancy rate of 81%. Not only did River Oaks meet the 70% threshold, there were times when River Oaks had more patients than licensed acute care beds. This high occupancy rate clearly shows a need for additional acute care beds. The determination of the appropriate number of additional beds is not so clear. There is no specific methodology set forth in the State Health Plan to determine the exact number of additional beds a hospital should be awarded once a need for additional beds has been determined. River Oaks used current and projected patient loads, staffing efficiencies, design considerations and the advice of architects to determine there was a need for 90 additional acute care beds. This consists of a new 33-bed medical/surgical unit, 33 acute care beds dedicated to obstetrical utilization,

---

[3] The CON applications were consolidated for the hearing at St. Dominic's request.

12

15 additional NICU (neonatal intensive care unit) beds and the conversion of 9 existing observation beds to licensed acute care beds.

River Oaks also used a statistical methodology commonly referred to as the "least squared" or "best fit" analysis as applied to linear regression. Through the use of this methodology, River Oaks documented a projected average daily census for FY 2007 of 112 patients per day and 118 patients per day for FY 2008. River Oaks also provided other secondary methodologies to support these numbers. River Oaks contends that once a hospital reaches the 70% threshold, the determination for the appropriate number of additional beds needed should be based on an occupancy rate of between 50% and 60%. This would allow reasonable growth by the hospital and the ability to handle high volume occupancy rate ranging between 50% and 60%, River Oaks would need between 187 and 224 beds. Since River Oaks is currently licensed for 110 acute care beds, the need would be between 77 and 114 additional beds. River Oaks determined that 90 new beds would be reasonable based on discussions with physicians and nurses, projected utilization and the most efficient use of the physical space available. From the evidence presented, it is reasonable to conclude that there is a need for 33 new medical/surgical beds, 33 new obstetrical beds and 15 new NICU beds. However, River Oaks contends that there is a need to convert 9 observation beds to licensed acute care beds on the basis that it would allow the hospital to more readily accommodate overflow and emergency situations. I find this to be without merit. Using the censes projections of River Oaks of 112 patients per day for FY 2007, and taking into account the addition of 33 new beds medical surgical beds, 33 new obstetrical beds and 15 new NICU beds, the hospital would have an occupancy rate of 70%. Even if the hospital were at 70% occupancy, that would leave 57 licensed acute care beds for overflow and emergency situations. I find that 81 additional acute care beds will sufficiently meet the needs of River Oaks.

¶22. In his conclusion and recommendation, the Hearing Officer further stated that "the evidence supported the addition of 81 new acute care beds." The Hearing Officer noted that ROH's offer to relocate 33 licensed acute care beds from Woman's "in an attempt to lessen the impact of adding new acute care beds. . . should be lauded as beneficial to the area health care system . . . and makes good health planning sense."

¶23. The State Hearing Officer reviewed ROH's proposal for CON and the Hearing Officer's recommendation and found that it complied with the Department's adopted Plans, Criteria, and

13

standards. The State Hearing Officer issued a letter constituting the final order and certificate approving, by reduction to 81 acute care beds, ROH's application for a CON for increased acute care beds at its facility.

¶24. St. Dominic appealed the Department's final order regarding the addition of acute care beds to chancery court pursuant to Miss. Code Ann. § 41-7-201. Chancellor Singletary heard the appeal regarding the bed addition CON and issued an opinion of the court. He determined that the Department's decision to approve ROH's bed addition CON was not reversible under the standard set forth in Miss. Code Ann. § 41-7-201(d).[4] The chancery court found:

> The applicable specific criterion in the *State Health Plan* requires that for the addition or relocation of beds, "the applicant shall document the need for the proposed project." SHP Criterion 1b. P. IX-29. The first step in establishing need for a project requires that the applicant "document that the facility in question has maintained an occupancy rate of at least 70 percent for the most recent two (2) years." *Id.* The applicant must then be able to establish that a need exists for the specific number of beds requested by citing "licensure or regulatory code deficiencies, institutional long-term plans (duly adopted by the governing board), recommendations made by consultant firms, and deficiencies cited by accreditation agencies (JCAHO, CAP, etc.)." SHP Criterion 1b, citing SHP Criterion 1a. P. IX-28. Clearly, there is substantial evidence to support the finding of MSDH [Department] that River Oaks successfully met these requirements.
>
> Agencies are believed to be invested with special knowledge in their areas of expertise and this special knowledge should be respected by the judiciary. Mr. Armstrong [Harold Armstrong, Chief of Health Planning at the Department of Health] has given extensive testimony as to the analysis of MSDH concerning the 70% occupancy rule. The Court finds no evidence that the application of this rule is arbitrary or capricious. In fact, the evidence is clear that this analysis is both reasonable and rational and has been applied uniformly to all CON applications. Therefore, the Court finds that the conclusion of MSDH that River Oaks has complied with the 70% occupancy rule is not subject to reversal.

---

[4] The record reflects that Chancellor Robinson, rather than Chancellor Singletary, executed a separate final judgment affirming the Department's final order granting ROH's application for a CON for additional acute care beds.

14

Once the threshold occupancy level has been satisfied, an applicant must "document the need for the proposed project. Documentation may consist of, but is not limited to, citing of licensure or regulatory code deficiencies, institutional long term plans (duly adopted by the governing board), recommendations made by consulting firms, and deficiencies cited by accreditation agencies (JCAHO, CAP, etc)." SHP Criterion 1a. P. IX-28. Mr. Armstrong testified that appropriate evidence of compliance with this criterion is not limited solely to the items enumerated in the rule, but also include various other factors, such as evidence of rapid growth of services offered by a facility, increased utilization by physicians, greater use of ancillary services, and further demand for physician office space ...

The evidence at hearing showed that the proposed project is designed to accommodate the rapid growth experienced by River Oaks over the past years, as well as to prepare the hospital for the anticipated increased utilization expected during the next five years. The uncontroverted evidence showed that the total patient days at River Oaks increased from 27,767 in Fiscal Year 1999 to 33,916 in FY 2003. This has resulted in an average daily census of 89.3 in FY 2003 and a current occupancy rate of 81%. Further, on 25% of all days during FY 2002, River Oaks' occupancy exceeded 90%.

The high utilization over the past few years occurred in each of the three major areas of acute care services: medical surgical, obstetrics and neonatal intensive care unit (NICU).... The evidence also showed dramatic growth in the emergency department and the diagnostic imaging department. As shown by the testimony presented at hearing, River Oaks is continuously faced with difficulty in admitting patients in a timely manner; some patients have even been forced to wait in the emergency department, the surgery recovery units, admissions and physician's offices. The hospital has further been forced to decline patients, particularly obstetrical patients in labor, due to the lack of available delivery and patient rooms.

Noel Falls, a health planning expert, who testified on behalf of River Oaks, estimated that the recent growth in acute care services created a need for additional acute care beds within a range of 77 to 114 beds. Notably, Debra Kolb, the health planning expert who testified on behalf of St. Dominic, admitted that River Oaks did have a need for additional acute care beds; Ms. Kolb only disagreed with the specific number of beds proposed by River Oaks. . . The Hearing Officer then proceeded to cite specific evidence in the record to substantiate the award of 81 beds to River Oaks. The specific evidence includes current and projected patient loads, staffing efficiencies, design considerations, advice of architects, as well as expert testimony. The Hearing Officer further noted that through the use of a statistical methodology, Mr. Falls

15

documented "a projected average daily census for FY 2007 of 112 patients per day and 118 patients per day for FY 2008." The Hearing Officer found that River Oaks "also provided other secondary methodologies to support these numbers." Reviewing all relevant evidence, including discussion with physicians and nurses, projected utilization and the most efficient use of the physical space available, the Hearing Officer found that "it is reasonable to conclude that there is a need for 33 new medical/surgical beds, 33 new obstetrical beds, and 15 new NICU beds."

Further evidence presented at hearing showed that the number of physicians who actively utilize River Oaks has increased materially over the past few years ... Further, MSDH considered the population growth of Rankin [C]ounty which is unparalleled in the State.... [T]he cumulative impact of all of the evidence, testimony, statistics and documentation offered by witnesses over the course of seven days that fully substantiates the award of 81 beds to River Oaks. River Oaks presented the testimony of 12 witnesses, displayed a videotaped walk-through of the hospital describing the current limitations of the existing facility and introduced in excess of 120 exhibits at hearing.... The decision was supported by substantial evidence and was not arbitrary or capricious. Likewise, this decision was not in excess of the statutory authority or jurisdiction of the State Department of Health, or a violation of any vested constitutional rights of any party involved in the appeal.

¶25. We find that there is substantial evidence in the record to support the Department's decision to allow the addition of 81 new acute care, by reduction, to ROH's facility. Therefore, St. Dominic has failed to meet its burden of proving the Department erred. *See His Way Homes, Inc.,* 733 So.2d at 767. Moreover, since the Department weighed and considered all factors under the *Mississippi State Health Plan* and the *Mississippi Certificate of Need Review Manual* general criteria, the Department's decision was not arbitrary or capricious, and it was supported by substantial evidence. *Jackson HMA, Inc. v. Miss. State Dep't of Health,* 822 So.2d 968, 972-73 (Miss. 2002); *Natchez Cmty. Hosp.,* 743 So.2d at 977. Accordingly, the chancery court did not err in affirming the Department's decision. **II.**

**Expansion CON Application**

¶26. St. Dominic argues that there is not substantial evidence to support the expansion CON application. ROH submitted an application requesting an expansion and relocation of its emergency department; an expansion through renovation of its diagnostic imaging department; and construction of a four story medical office building (MOB). Two main sub-issues are raised by St. Dominic those being that (1) the elements of criterion 1(a) were not satisfied, and (2) the evidence used to show the need to expand and renovate was not credible or sufficient. While St. Dominic argues about evidence that allegedly is not included, it does not demonstrate that ROH failed to show that there is no substantial evidence to support the CON, nor that the rulings were arbitrary or capricious.

¶27. The general standard of review for CON cases has previously been stated in this memorandum. Pursuant to Miss. Code Ann. §§ 41-7-191 & -201(2)(f), the State Health Officer adopted the Hearing Officer's recommendation and the Staff's analysis to determine that the CON application for the expansion/renovation and MOB of River Oaks was in substantial compliance with the MSDH adopted plans, criteria, and standards.

¶28. The Staff's analysis found that the project was in substantial compliance for the expansion and renovation contained in the *State Health Plan and the Mississippi Certificate of Need Review Manual.* The Staff found that the need requirement was upheld and ultimately recommended approval of the project. In its conclusion and recommendation, the Staff stated:

> This project is in substantial compliance with the criteria and standards for expansion and renovation as contained in the FY 2003 State Health Plan; the Mississippi Certificate of Need Review Manual, 2000 revisions; and all adopted rules, procedures, and plans of the Mississippi State Department Health.

> The applicant documented the need for the proposed project, based on growth and utilization of facilities and services in the areas affected by the project.

17

Therefore, the Division of Health Planning and Resource Development recommends approval of the application by River Oaks Hospital, Inc. for the Vision 2003 Facility Expansion/Renovation and Medical Office Building project.

¶29. The Staff analysis included specific finding regarding the State Health Plan (SHP) Criterion 1 which is the need requirement. The Staff stated:

According to the applicant, this project is necessitated by the rapid growth in the types of services offered at the facility, the increased number of physicians on the hospital's medical staff, and the increase in the demand for ancillary services. Applicant submits that within the past three years, River Oaks has experienced:

- 49% growth in the utilization of its existing radiology and imaging services;

- 11% growth in the number of patients treated in the hospital's emergency department;

- the addition of 36 new physicians to the hospital's medical staff;

- the addition of new acute care services, including diagnostic cardiac catheterization and angiography.

The applicant submits that as a result of this growth, current hospital facilities have become inadequate to serve the volumes being experienced. In addition, due to the lack of space, existing programs, such as physical and occupational therapy, are experiencing difficulty in expanding and reaching peak operational efficiencies.

The project involves the construction of a new medical office building and an infill connector area, relocation of the Emergency Services Department, renovation and expansion of Radiology and Imaging, and relocation of Physical and Occupational Therapy, Admissions, Main Lobby and Medical Records.

Construction of Medical Office Building. This is a prime component of the project which requires construction of approximately 127,000 square feet of new space in a building directly connected with the existing hospital and the Suites. The construction of this facility will allow River Oaks to accommodate physicians desiring to establish an office practice in a facility immediately accessibly to an acute care hospital. The additional space will also allow River

18

Oaks to recruit new physicians to the facility's medical staff, and will free up space for the addition of acute care beds, which the applicant addresses in its application for "Vision 2003 Addition of 90 Acute Care Beds", also pending before the Department.

Relocation of the Emergency Services Department. As a result of the construction of the new medical office building, applicant states that sufficient space will be available for River Oaks to lease space from the MOB developer for the relocation of its existing emergency services department. Applicant documents in the application that River Oaks has experienced a steady and continued growth in the utilization of its emergency services, increasing the total visits per year from 15,715 in FY 2000 to 17,470 in FY 2002. If this same growth were to continue, River Oaks anticipates serving approximately 20,979 patients by FY 2006.

River Oaks Hospital expects to continue participating in the Mississippi State Trauma Network as a Level IV provider.

Renovation and Expansion of Radiology and Imaging. Applicant submits that following the relocation of the emergency services department, it will have sufficient space available for the renovation and expansion of the radiology and imaging department. The utilization of the services offered by this department has increased by 49 percent since FY 2000. If this growth continues, River Oaks expects to perform in excess of 99,173 imaging services by FY 2006.

Relocation of Physical and Occupational Therapy, Admissions, Main Lobby and Medical Records. After relocating the above referenced services, applicant expects that there will be space available to consolidate and expand other services such as radiology and imaging into a more central and efficient area of the facility.

The applicant states that this project encompasses the hospital's long range plan to expand its ability to offer needed services to its service area.

¶30.    An analysis based upon the Certificate of Need Review Manual was also performed. The

Staff's experts' analysis of the General Review (GR) Criteria provided:

GR Criterion 3 - Availability of Alternatives

Applicant believes that the project, as proposed, is the most efficient and cost effective method of meeting the needs of the health care community served by River Oaks Hospital. Applicant states that the hospital thoroughly considered

a number of alternatives, including (1) the construction of a freestanding medical office building and imaging center, (2) renovation of existing facilities without construction of a new medical office building, and (3) maintain the status quo.

The alternative to construct a freestanding MOB was rejected because additional space was needed for physicians, such as OB/Gyns, who need immediate access to acute care patients and services; and a freestanding imaging center would be less accessible to acute care patients or could potentially result in the duplication of equipment.

The alternative to renovate existing facilities without construction of a new MOB was rejected due to the physical space constraints faced by departments in the current configurations. Applicant states that only through the relocation of the emergency department is sufficient space gained to expand the imaging department to appropriately meet current utilization requirements. In addition, the construction of the MOB will make available needed space for expanded acute care services. (Applicant also has pending before the Department an application for the addition of 90 acute care beds and renovation).

Applicant rejected the alternative to maintain the status quo due to the rapid growth in the provision of services at the hospital.

\* \* \*

GR Criterion 5 - Need for Service

River Oaks submits that the proposed services will be accessible to all residents of the area including low income persons, racial and ethnic minorities, elderly, women, handicapped persons, or any other underserved groups.

The proposed project is designed and intended to accommodate current and projected utilization of services for patients of the River Oaks Hospital service area. No adverse impact is anticipated on any other facilities or services.

The application included five letters of support for the project.

Written comments were received from St. Dominic-Jackson Memorial Hospital indicating that River Oaks did not provide adequate information in its application to demonstrate that there exists any need for the expansion. It also questions the need for another MOB when the applicant currently has a MOB under construction (said MOB was CON approved in 2000). However, according to River Oaks, phase one of the already approved MOB is currently under construction and is specifically designed for physicians who desire office space

20

on a hospital campus, without requiring immediate and direct access to an inpatient facility. In addition, applicant states that this building has smaller contiguous office configurations designed for smaller practices.

Applicant submits that the MOB requested in this application will have more contiguous space available for larger practices, which could not be accommodated in the smaller building currently under construction. In contrast, to the types of practices desiring space in a freestanding building, many physician specialities, such as obstetrics and gynecology, vascular surgery and neurology, prefer medical office space located directly adjacent to the acute care patients, labor and delivery suites, and surgical operating rooms.

St. Dominic also questions the applicant's use of the diagnostic cardiac catheterization service as justification for the project. The diagnostic cardiac catheterization service is a joint venture between River Oaks Hospital, Woman's Hospital and Rankin Medical Center, and is housed at River Oaks Hospital.

* * *

GR Criterion 8 - Relationship to Existing Health Care System

The applicant submits that the CON proposal involves an enhancement to the existing facilities and delivery of services River Oaks Hospital already provides to the community. Therefore, the proposed project is expected to have no adverse impact on existing facilities. Applicant believes that the project is vital for the delivery of these health care services to patients of the River Oaks Hospital.

* * *

¶31. St. Dominic opposed the application and requested a public hearing pursuant to Miss. Code Ann. § 41-7-197(2). Following the hearing, the Hearing Officer recommended approval of the CON, which the State Health Officer adopted. In the Hearing Officer's finding of facts and conclusion of law and recommendation, the Hearing Officer found that the four goals underlying the General Certificate of Need Policies were met in accordance with the State Health Plan.

The State Health Plan provides that CON applications are to be judged against four General Certificate of Need Policies: to prevent unnecessary duplication of health resources, to provide cost containment, to improve the health of

21

Mississippi residents, and to increase accessibility, acceptability, continuity and quality of health services. Of these, the primary purposes are cost containment and the prevention of unnecessary duplication of health resources, and these two purposes shall be given primary emphasis in the Certificate of Need process. I find that both Applications meet the four general goals of the State Health Plan.

Also, a review of the sixteen general requirement criteria was performed.

¶32. After this CON application for the expansion/renovation and MOB was granted, St. Dominic appealed the decision to the Chancery Court of Hinds County. Chancellor Wise reviewed the case and affirmed the State Health Officer's final order granting the CON application approving the expansion, renovation and MOB in the River Oaks Facility Expansion Application. The chancery court found that the overwhelming weight of the evidence presented demonstrated a need for the project.

¶33. The chancery court set forth the applicable standard for hospital expansion projects and MOB's. The Mississippi State Health Plan Need Criterion 1(a) for hospital expansion projects provides:

The applicant shall document the need for the proposed project. Documentation may consist of, but is not limited to, citing of licensure or regulatory code deficiencies, institutional long term plans (duly adopted by the governing board), recommendations made by consulting firms, and deficiencies cited by accreditation agencies (JCAHO, CAP, etc). In addition, for projects which involve construction, renovation, or expansion of emergency department facilities, the applicant shall include a statement indicating whether the Hospital will participate in the statewide trauma system and describe the level of participation, if any.

¶34. The chancery court found that there was substantial evidence of need of expansion for the three areas, those being the Emergency Department; the Diagnostic Imaging Department, and the MOB. The chancery court provided lengthy detailed facts to substantiate the need for

22

these three expansions in its opinion.  Further, the chancery court found that there was substantial evidence to support the MSDH's finding that the project complied with the State Health Plan.  As part of the reasoning to affirm the CON, the chancery court also relied upon *Jackson HMA, Inc. v. Miss. State Dep't of Health,* 822 So.2d 968 (Miss. 2002).  *Jackson HMA, Inc.,* dealt with St. Dominic's CON to a $35 million MOB.  In *Jackson HMA, Inc.,* this Court held:

> As previously indicated, it is not the responsibility of this Court to determine whether St. Dominic has proven a need for a $35 million MOB.  Instead, it is the responsibility of this Court to determine whether MSDH's decision that St. Dominic has proven a need for the $35 million MOB is reversible under Mississippi law.  The 1999 State Health Plan provides that the four primary goals underlying Mississippi's Certificate of Need laws are: (1) to improve the health of Mississippi residents, (2) to increase the accessibility, acceptability, continuity and quality of health services, (3) to prevent unnecessary duplication of health resources, and (4) to provide some cost containment. MSDH's order approving the CON addressed all of these above-stated goals. MSDH determined that St. Dominic demonstrated that a new MOB would allow for ease of traffic and parking congestion at the current location. Furthermore,  MSDH found it to be cost effective to plan to build a facility larger than what was required to satisfy the immediate known need for additional space.  This was supported by evidence that St. Dominic is landlocked and following construction of the proposed MOB, no additional space will be available that allows for direct access to the existing facilities. Testimony was also presented that constructing a smaller facility to meet current demands and subsequently adding to it to meet future demands for space runs contrary to the goal of cost containment. Inasmuch as the proposed project is based on long-range need projections, MSDH determined that the projected cost is justified.
>
> Since MSDH weighed and considered all factors under the 1999 State Health Plan and the CON Review Manual general criteria, MSDH's decision was not arbitrary or capricious, and it was supported by substantial evidence.  Thus, this argument is without merit.
>
> The MSDH decision, finding that the proposed medical office building is needed and the CON application satisfies all applicable general review considerations, was not arbitrary or capricious.  Furthermore, this Court finds that the MSDH order was supported by substantial evidence, was not contrary to the manifest

23

weight of the evidence, was not in excess of the statutory authority or jurisdiction of the MSDH, and did not violate any vested constitutional rights of any party involved in the appeal. Therefore, the judgment of the chancery court upholding the decision of the MSDH is affirmed.

*Id.* at 972-73.

¶35. Very similar to *Jackson HMA, Inc.*, ROH has proposed an expansion project to meet its current and future patient needs and demands. We find that ROH's CON application was supported by substantial evidence and that the Department's decision to grant the CON was not arbitrary or capricious. Accordingly, the chancery court did not err in affirming the Department's decision.

## CONCLUSION

¶36. Therefore, for the reasons stated above, the judgments of the Hinds County Chancery Court upholding the Department's decisions are affirmed.

¶37. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**