500 So.2d 981 (1986)
CLAIBORNE COUNTY BOARD OF EDUCATION
v.
Nathaniel MARTIN, Jr.
No. 56740.
Supreme Court of Mississippi.
December 3, 1986.
Rehearing Denied February 11, 1987.
*982 Everett T. Sanders, Sanders, Blackmon & Dunmore, Natchez, for appellant.
Denise Sweet-Owens, Owens & Byrd, Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This appeal concerns a county school board's failure to rehire a long time high school teacher and guidance counselor who got crossways politically with the school board and the county superintendent of education. Even when all due deference is given to the School Board's authority in prerogatives in such matters, we are left with a record which reflects no rational basis for the decision not to reemploy the teacher. The Chancery Court ordered the School Board to offer the teacher a new contract with back pay. We affirm.

II.

A.
For over eleven years, Nathaniel Martin, Jr. was employed by the Claiborne County Board of Education and was assigned duties at the Port Gibson High School. For his first nine years, Martin was a social science instructor. For the next two and a half years, he served as a high school guidance counselor.
On April 3, 1984, Dr. John C. Noble, Superintendent of Education for Claiborne County, advised Martin that he would not be reemployed for the school year 1984-1985. The reason given was
because of a reduction in force in the area of his employment [guidance counselor]. The enrollment is less than 500 students and, therefore, only one counselor is required.
Martin had apparently gotten wind of his impending non-reemployment months earlier, for on January 3, 1984, he wrote to Noble and asked that, if "the present enrollment doesn't warrant two counselors," *983 he be allowed to return to his former teaching position as a social science instructor. On January 25, 1984, Martin renewed this request in another letter to Superintendent Noble. It appears that there was a vacancy as social science instructor at Port Gibson High School. On February 6, 1984, Lewis A. Jones, Port Gibson High School Principal, filed with the superintendent a written recommendation that Martin be given that position, stating "he did a good job in this area [during the nine years he previously taught] and I believe he will do the same." Dr. Noble declined the recommendation and, instead, the vacant social science instructor position was given to a teacher named Jimmy Curry. Superintendent Noble stated that he wanted to fill the social science position with someone qualified to teach in the economics area. Curry had three years teaching experience in economics at Hinds Junior College, Utica Branch, while Martin had no previous teaching experience in the area as such.
Superintendent Noble's explanation for non-reemployment of Martin as a guidance counselor appears to have been tied solely to the accreditation standards of the Commission On Secondary Schools, Southern Association of Colleges and Schools. Those standards require that high schools having a student population between 300 and 499 have one half time guidance counselor. The record reflects that during the 1983-84 school year, the enrollment at Port Gibson High School was 401. According to the accreditation minimum standards, only one half time guidance counselor was required. At that time, Port Gibson High School had two guidance counselors, Martin and Mrs. Helen Barnes. Apparently Barnes was retained as the sole guidance counselor for the 1984-85 school year.
There is no suggestion that Martin was incompetent, ineffective or otherwise disqualified from continuing in his position. Nothing in the record suggests that the counseling needs of the students of Port Gibson High School were thought to be any less for the school year 1984-85 than they had been for the previous three years, during which time the school had the services of two guidance counselors. There is no suggestion of a funding shortage or a work force cutback based upon budgetary considerations. No reason was ever offered why it was perceived by the Superintendent and the Board of Education to be in the best interest of the Port Gibson High School that the number of guidance counselors be reduced from two to one.
Martin was first employed as guidance counselor in the 1981-82 school year. At that time he became the second counselor. Martin had earned his Master's Degree in Guidance and Counseling from Jackson State University and had completed a number of courses beyond that point. He held a AAA teaching certificate in both Social Science and in Guidance Counseling. Of interest is the fact that, during the three years Martin served as the second guidance counselor, Port Gibson High School never had as many as 500 students. Statistics reflect that.

 Year Number of Students
 1979-1980 444
 1980-1981 448
 1981-1982 432
 1982-1983 437
 1983-1984 401

B.
Following receipt of his non-reemployment notice, Martin requested a hearing before the Claiborne County Board of Education. That hearing was held on May 24, 1984. Miss. Code Ann. § 37-9-101, et seq. (Supp. 1985) Evidence adduced at the hearing has been summarized above.
Martin sought to show that the reason for his non-reemployment was his past political opposition to several board members and the superintendent. Specifically, the record reflects that in previous years Martin had supported a recall petition brought against three board members. He had opposed the election of Dr. Noble as superintendent in 1983, apparently having favored the candidacy of then incumbent Joseph Travillion.
When Martin first sought to show that his political activity may have been the *984 basis for his non-reemployment, an objection by the School Board attorney was sustained by the School Board Chairman. The evidence was thereafter presented as follows:
Q. You have had differences with Dr. Noble and the School Board in the past, have you not?
A. Yes, I have.
Q. The fact that you campaigned for the recall of three of the board members 
BY MR. SANDERS:
To which we object.
BY MR. SMITH:
The objection is sustained.
BY MR. BANKS:
We would like to make a proffer.
Q. Now, tell me Mr. Martin, is it a fact that you campaigned and circulated a petition for the recall of three of these board members?
A. Yes, I did.
Q. Is it a fact that you campaigned for the reelection of Dr. Travillion rather than the reelection of Superintendent Noble?
A. Yes, I did.
Q. Tell me whether or not there were circumstances which made these individuals aware of your activities?
A. Yes.
Q. Describe those circumstances.
A. When Mr. Noble saw me in District Two campaigning, also Mr. Smith, Dr. Smith [School Board chairman] over there, I was in District Two and Mr. Knox saw me circulating the petition down by Alcorn one night.
School Board Chairman, Dr. Jimmy Smith, near the end of Martin's testimony, engaged in this short colloquy with Martin:
BY DR. SMITH;
Q. I have one question. Mr. Martin, you stated that you supported the recall in the campaign of Mr. Noble. It is true that you lost on both occasions, right?
A. Yes, uh huh.
Following the May 24, 1984 hearing, the Board of Education issued a written decision in which it found
that the recommendation of the Superintendent with respect to the reduction in force in the area of counseling was a sound and proper employment decision. The enrollment at the Port Gibson High School is less than 500 students and pursuant to the minimum personnel requirements of the Southern Association of Secondary Schools, the Port Gibson High School is required to only have one-half (1/2) counseling professionals.
No other reason is presented or found why it was necessary to reduce the number of counselors at the Port Gibson High School. On June 1, 1984, the Claiborne County Board of Education issued its Order implementing this decision and affirming the Superintendent's decision that Martin would not be reemployed for the school year 1984-85.
Martin then appealed to the Chancery Court of Claiborne County, Mississippi, which on March 1, 1985, filed a written opinion reciting the facts, the controlling principles of law and in the end holding that Martin was not reemployed because of his constitutionally protected political activity. On May 6, 1985, the Chancery Court entered its final decree directing that Martin be rehired either as a guidance counselor or as a social science teacher, whichever best suited the needs of the School Board, and be given back pay.
The Claiborne County Board of Education has perfected its appeal to this Court where the matter is now ripe for review.

III.
Our scope of review in cases such as this is limited and familiar. Miss. Code Ann. § 37-8-113 provides that the scope of review in the chancery court
shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:

*985 (a) not supported by any substantial evidence;
(b) arbitrary of capricious; or
(c) in violation of some statutory or constitutional right of the employee.
Cf. Noxubee County Board of Education v. Overton, 483 So.2d 301, 303 (Miss. 1985); Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985); Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 736 (Miss. 1984). We adhere to the same scope of review when such cases are appealed to this Court pursuant to Miss. Code Ann. § 37-9-113(5). See Merchant v. Board of Trustees of Pearl Municipal Separate School District, 492 So.2d 959, 961 (Miss. 1986).
There is a constitutional backdrop, given express recognition in Section 37-9-113(3)(c), which must inform our decision. To begin with, public school employees are entitled to exercise rights protected by the First Amendment to the Constitution of the United States and by Article 3, Section 13 of the Mississippi Constitution of 1890 without fear that their employment will be terminated or adversely affected. Givhan v. Western Line Consolidated School District, 439 U.S. 410, 414, 99 S.Ct. 693, 696, 58 L.Ed.2d 619, 623-24 (1979); Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471, 481-82 (1977). School boards in this country have broad authority but none that they may not exercise within the limits of the Constitution. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1637 (1943); Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 240 (Miss. 1985).
In proceedings such as this, the aggrieved teacher has the burden at the school board hearing of proving that he or she was not reemployed by reason of some constitutionally impermissible consideration; that is, the teacher must prove that she was engaged in constitutionally protected conduct and that such conduct was a substantial factor in the superintendent's non-reemployment decision. See Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 737 (Miss. 1984). In aid of the teacher's ability to shoulder this burden, we recognize that, where a teacher has engaged in constitutionally protected political activity, and where the superintendent's reason for non-reemployment is shown to be false or a sham, the teacher gains the benefit of a rebuttable presumption that non-reemployment was for constitutionally impermissible reasons. See Fluker v. Alabama State Board of Education, 441 F.2d 201, 209 (5th Cir.1971). Thereafter, once the teacher establishes that non-reemployment resulted from constitutionally impermissible considerations, he or she is (rebuttably) presumptively entitled to reinstatement. Banks v. Burkich, 788 F.2d 1161, 1164 (6th Cir.1986); Professional Association of College Educators v. El Paso County Community College District, 730 F.2d 258, 268 (5th Cir.1984).
The record before us is uncontradicted in its establishment of the fact that in the recent past Martin had been engaged in political activities offensive to the powers that be. He had campaigned for the reelection of Dr. Travillion who had been defeated for the office of superintendent by Dr. Noble. Martin had also signed a recall petition directed at three of the incumbent members of the Claiborne County Board of Education.
Our prior decisions nevertheless instruct consideration of whether there is substantial credible evidence that the school board may rationally have made the same reemployment decision in the absence of Martin's protective conduct. See Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 737 (Miss. 1984); Tanner v. Hazlehurst Municipal Separate School District, 427 So.2d 977, 979 (Miss. 1983). The School Board's decision of May 24, 1984, as well as the record, reflect only one other possible reason for Martin's non-reemployment, to-wit: "a reduction in force in the area of counseling." The reason found by the School Board at the non-reemployment *986 hearing for making this reduction in force was
the enrollment at the Port Gibson High School is less than 500 students and pursuant to the minimum personnel requirements of the Southern Association of Secondary Schools, the Port Gibson High School is required to only have one-half (1/2) counseling professionals.
This is tantamount to the superintendent's opening his desk drawer, pulling out and dusting off an unused piece of paper  the minimum accreditation standards, and deciding not to reemploy Nathaniel Martin, Jr. No other reason is found and none was proffered. The School Board on this record could not rationally have decided that Martin not be offered a new contract without considering his protected political activity.
We have no law requiring that our school districts hold their standards to the absolute minimum necessary for accreditation, only a long tradition to that effect. But here there has been no such tradition, for the Port Gibson High School since 1979 had approximately the same number of students and was by accreditation standards required to have only one-half (1/2) counselor and, notwithstanding, the school board, commendably, had decided to exceed those minimum requirements and had in fact provided two counselors. There is not one word in the record before this Court to suggest any reason for the reduction in force decision  no hint of a loss of funding, budgetary cutback, lack of need of counseling services on the part of students or anything of the like.
In such a setting the only conclusion that may rationally be drawn is that the decision of the School Board of May 24, 1984, and the Order of June 1, 1984, implementing that decision, is a sham. More precisely, they were arbitrary and capricious within the meaning and contemplation of Miss. Code Ann. § 37-9-113(3)(b). In addition, and in the alternative, this decision and order that Martin not be reemployed is presumptively violative of his constitutional right of free speech within the meaning and contemplation of Miss. Code Ann. § 37-9-113(3)(c). There is no evidence in the record that would cast any significant doubt on this conclusion. The presumption stands unrebutted.
Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730 (Miss. 1984) represents the other side of the coin. In Gates, the facts reflected that the non-reemployed teacher had been guilty of insubordination to the superintendent and had violated school policies regarding personal leave. Though Peggy Gates was also involved in protected activity, the School District had a legitimate substantive reason, upon which the non-reemployment decision could be based. This was sufficient to rebut the presumption and place the case beyond our authority to hold the School District's decision arbitrary and capricious.
The Chancery Court ordered that Martin be rehired and assigned a position which best suited the needs of the school district and that he be given back pay. We affirm.
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
WALKER, C.J., and DAN M. LEE, J., dissent by separate written opinion.
DAN M. LEE, Justice, dissenting:
I agree with the learned chancellor below and with the majority opinion that Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730 (Miss., 1984) applies to this case. In fact, I totally concur with the chancellor's holding that "this case comes squarely within ... Gates." However, it is for that very reason that I would hold that where, as here, the school board may assert one viable reason not to rehire an employee, that reason will validate its action.
The facts in this case show clearly that Nathaniel Martin had attempted for some time to be placed in the position of counselor in the school district. He made a request of Superintendent Noble in 1977, a request of A.W. Watson, principal of Addison *987 Junior High School, in 1978, and a request of Joseph Travillion in 1980. In the request to Dr. Travillion, Martin recognized that "Most accreditation committees require at least one counselor for every 300-500 students." It appears, then, that the lack of necessity for two guidance counselors in the system was not a novel idea when it was conveyed to Martin during the 1982-83 school year. Instead, it appears to have formed the basis for the continuing failure to assign Martin to that post, as Martin well knew!
Even in his testimony before the board, Martin admitted that his removal as counselor was not the problem. He stated that "[M]y complaint is whenever they decided to reduce the counseling staff and a position at that time was vacant for studies, my complaint is that I should have been moved in that position." Thus, Martin himself does not attack the reduction in counselors, a fact that the majority decision dwells upon at some length, but the failure to install him as a social science teacher.
The social science teaching position that Martin desired was filled by a Mr. Curry, who had taught economics at Hinds Junior College for three years. Noble's testimony was that this appointment was made to strengthen the social sciences curriculum, and that testimony is uncontradicted. Martin raised the issue during the hearing of whether another social science teacher should have been dismissed in order to open a slot for him. However, the record shows two reasons why that action was not required. First, the uncontradicted testimony from Noble was that the decision to reduce the number of counselors came at a different time than the decision to reevaluate and rehire other teachers. Second, the school district's policy required, in a reduction of force situation, the consideration of: "Seniority and qualifications, however, when a reduction of force is necessary, the choice of which teacher should be retained is is [sic] judicial decision for the school board." [emphasis added] For these reasons, it is clear that the school board had a viable reason for terminating Mr. Martin's position as a counselor and for not moving him to a position as a social science instructor. Martin is asking this Court to ignore these facts and to hold that he was denied reemployment solely because of his political activities. In light of the settled law on the school board's discretion, I believe that we cannot fail to recognize all of the factors bearing on its decision.
In Gates, we held that:
The Board of Trustees is required by statute to make the ultimate employment decision on all teacher dismissal and non-renewal cases. If there is any credible evidence to sustain the decision of the administrative body's finding of facts, then those findings should not be overturned, even on conflicting evidence.
461 So.2d at 738. This inherent discretion granted to the school board has been recognized by this Court since Gates, in Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 242 (Miss. 1985) ("We say that courts may interfere only where legally permissible limits are exceeded or where there has been a gross abuse of discretion."); and in Everett v. Board of Trustees of Meridian Municipal Separate School District, 492 So.2d 277, 283 (Miss. 1986) ("As long as the board's findings are supported by substantial evidence, this Court will not reverse the board.") Furthermore, as clearly stated in Gates, the procedure for passing on a claimed constitutional violation, in this context, is that the teacher's initial burden of proof is to show that his activity was constitutionally protected, and that it was "a substantial factor in the Board's decision... . [T]hen the board must show by a preponderance of the evidence that it would have made the same decision as to the teacher's reemployment in the absence of the protected conduct." 461 So.2d at 737 (citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).
I believe, first, that Martin failed to show that his campaigning was a "substantial factor in the Board's decision." The letter from Dr. Noble clearly stated that the action *988 was being taken because of the enrollment level. However, even if Martin did meet his initial burden, the Board's evidence on the enrollment level and the qualifications of the teacher chosen to fill the social science spot show, by a preponderance of the evidence, that the Board's decision would have been the same in the absence of Martin's political activities. As we held in Gates, even if the exercise of constitutional rights is a factor in a decision not to employ, one viable reason not to rehire may still validate the board's decision. Id. at 739. I believe that the school board here showed sufficient valid reasons not to reemploy Mr. Martin.
I would, therefore, reverse the chancellor in this case, and affirm the actions of the school board.
WALKER, C.J., joins this opinion.