GRIFFIS, J.,
for the Court.
¶ 1. Peggy Bowden requested a hearing before the Lawrence County School Board when it approved the superintendent’s decision not to renew her employment. The Board upheld the decision. Bowden appealed to the Lawrence County Chancery Court, which likewise affirmed the Board’s decision. Bowden appeals and argues the Board’s decision should be reversed be *489 cause it was arbitrary and capricious. We find no error and affirm.
FACTS
¶ 2. The Lawrence County School Board employed Bowden as the guidance counsel- or for both New Hebron Attendance Center and Monticello Junior High School. She worked Monday and Tuesday at New Hebron and Wednesday through Friday at Monticello. This was her schedule for two school years, 1998-2000.
¶ 8. On March 24, 2000 the Board advised Bowden that it would not renew her employment for the upcoming school year. This decision was based on the recommendation of both of the principals, Dr. Flavol Rester and Dr. James Ochenrider. Rester gave two reasons for his recommendation — Bowden’s failure to maintain student records and failure to work cooperatively with staff members. Ochenrider gave the same reasons and added that Bowden processed changes without approval of the principal, “not availing” herself “for resolving emergency situations requiring counseling,” and making parents wait when trying to enroll students in school.
STANDARD OF REVIEW
¶ 4. When this Court reviews a decision by a chancery or circuit court concerning an agency action, we apply the same standard of review that the lower courts are bound to follow. Miss. Sierra Club, Inc. v. Miss. Dep’t of Envtl. Quality, 819 So.2d 515, 519 (¶ 15) (Miss.2002). The standard of review of a school board’s decision not to renew an employment contract is set by statute:
The scope of ■ review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 37-9-113(3) (Rev.2001). Uncorroborated hearsay is not substantial credible evidence. Noxubee County Bd. of Educ. v. Givens, 481 So.2d 816, 820 (Miss.1985).
ANALYSIS
¶ 5. Bowden argues the Board’s decision was arbitrary and capricious because it had no basis in fact. The Board replies that there was substantial evidence to support the reasons for non-renewal.
¶ 6. The terms “arbitrary” and “capricious” imply “a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” St. Dominic-Jackson Mem’l Hosp. v. Miss. State Dep’t of Health, 910 So.2d 1077, 1082 (¶ 14) (Miss.2005) (quoting HTI Health Servs. of Miss., Inc. v. Miss. State Dep’t of Health, 603 So.2d 848, 851 (Miss.1992)). “An act is arbitrary when it is not done according to reason or judgment, but depending on will alone.” Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370(¶ 14) (Miss.1998). If the reasons for non-renewal are a sham, or are a retaliation for the employee’s constitutionally protected activity, the Board acts arbitrarily and capriciously. Claiborne County Bd. of Educ. v. Martin, 500 So.2d 981, 986 (Miss.1986).
¶ 7. -For example, in Claiborne County Board of Education, the school board declined to renew the employment of Martin, a guidance counselor, at Port Gibson High School. Id. at 982. The board likewise refused to place Martin in a vacant social science teaching position. Id. at 983. This was despite the fact the principal *490 recommended Martin for the teaching position, and Martin had previously taught this position at the same school, for nine years prior to becoming a guidance counselor. Id. at 982-83. The board’s proffered reason was that the minimum' accreditation standards only required one guidance counselor for an enrollment of less than five hundred students. Id. at 982. Martin was one of two counselors at Port Gibson. Id. at 983. However, from 1979 to 1984, Port Gibson had under five hundred students each year and employed two guidance counselors. Id. There was no evidence of any budget cutbacks or decline in student needs to justify reducing the counseling staff from two to one. Id. Because the proffered reason was a sham, the board’s decision was arbitrary and capricious. Id. at 986. Moreover, Martin had engaged in political activity against three members of the board and the superintendent. Id. at 983. Because there was no other reason to fire Martin, the board was unable to rebut the presumption that he was fired in retaliation for his political views. Id. at 986. The court reversed the board’s decision, and Martin was reinstated and given back pay. Id.
¶ 8. Likewise, in Noxubee County Board of Education, the supreme court held that a school board acted arbitrarily and capriciously when it fired Givens. Although Givens’ contract assigned her to Noxubee Elementary, the superintendent, by letter, reassigned her to Wilson Attendance Center. Noxubee County, 481 So.2d at 817. When Givens arrived at Wilson Attendance Center, no one at the school knew she was coming. Id. The principal never assigned her any duties. Id. Givens reported to school every day for about a month and volunteered to help the other teachers. Id. Confused by the lack of duties, she consulted her contract and reported to Noxubee Elementary. Id. The principal at Wilson Attendance Center did not object. Id. For several days, Givens stayed in the office at Noxubee Elementary without being given any duties. Id. She finally asked the superintendent where she was supposed to be and was told Wilson Attendance Center. Id. She reported to Wilson Attendance Center the next day, only to be fired by the superintendent. Id. at 817-18. The board accused Givens of insubordination and neglect of duty. Id. at 819. There was- no evidence that Givens was given any duties, much less that she neglected them or willfully engaged in insubordination. Id. The only possible evidence to support the board’s holding was uncorroborated hearsay. Id. at 820. The supreme court held that while the board could accept hearsay, uncorroborated hearsay was not substantial evidence. Id. The court reinstated Givens. Id.
¶ 9. The reasons given for the non-renewal of Bowden’s contract were: (1) failure to maintain the student records, (2) failure to cooperate with staff, (3) processing changes without approval of the principal, (4) “not availing self for emergency counseling situations,” and (5) making parents wait to enroll students.

A. Failure to maintain student records

¶ 10. Rester, the principal of New He-bron, testified he audited the school records September 9, 1999, and January 20, 2000. The September audit indicated that there were four, out of over 400, records which were not placed in the appropriate location. It also indicated that a certain student’s record had been requested several times by the alternative school to which the student had been transferred, and Bowden had neglected to locate and send it. The January audit revealed that there were eight student records that were not filed. Five of these records were received *491 by the school on January 11, one was received January 13, and two were received on January 18. January 11 and 18 were days when Bowden was at the school. On January 24, she was told to file them and did. Rester, school secretary Rose Davis, and office assistant Silas Lewis testified that there were constant problems with the records in the wrong place, missing documentation, documents not filed, and multiple requests of parents to bring in duplicate documentation. All three testified, however, that other teachers and office personnel have access to these records and .Bowden only works there two days a week. Lewis admitted that his job was to assist Bowden with the record keeping.
¶ 11. Ochenrider, the principal of Monticello, also testified to students’ records which were missing documentation. Just as at New Hebron, all teachers and staff had access to the student records, and Bowden only worked there part of the week. He also accused Bowden of sending records out without the proper clearance. Specifically, the records did not have complete documentation or there would be a monetary hold on the records, which should have prevented them being sent out.

B. Failure to cooperate with staff

¶ 12. Rester and Davis testified that Bowden did not get along with Davis. According to their testimony, this animosity occurred because Bowden would ask Davis to make copies. Rester and Davis both admitted that it was Davis’ job, as the school secretary, to make copies for whoever requested it if she had the time. If Davis was busy, the person was to make her own copies. Davis said there was nothing wrong with Bowden asking her to make copies. Rester also testified that one day, Bowden was upset to discover that boxes of standardized testing materials had been placed in her office. He explained that the boxes had to be placed there in order to comply with the school’s security plan with the State Department of Education. Bowden continued to argue with Rester about it several times that day. Rester testified:
And then one of the instances that was really a particular aggravation to me was that I was — she approached me, and I told her that I was on the phone at that time, to just give me a few minutes. And I was between calls because I was waiting for this person to return the call.
And her remark to me was, “Well, are you on the phone now?”
And I said, “Mrs. Bowden, we will take care of this, then.”
So we went [into] my office, and I just told her, “The boxes are going to stay in your office.”
And at this point in time, she told me that her stress level was beyond belief, and that she was going to have to take off the rest of the day and go see [Superintendent] Bull.
¶ 13. Ochenrider testified that Bowden and the school secretaries, Gladys Smith and Carol Moye, were at odds. Bowden complained Smith and Moye would not assist her, and the secretaries argued that Bowden was trying to get them to do her job. Ochenrider admitted that, time permitting, as school secretaries, they were to assist office personnel. Ochenrider also complained that Bowden and the teachers did not get along, because Bowden would not reschedule an advisory meeting. However, he said he left the decision to Bow-den and could have vetoed it if he wanted.

C. Processing schedule changes without approval

¶ 14. Bowden’s last teacher evaluation at Monticello was dated February 2, 1999. *492 It noted that she did not consult “with the administration, as necessary, concerning changes in schedules for the students.” Ochenrider testified that this evaluation was done under a previous principal, Mr. Sills. Ochenrider, too, had problems with Bowden making schedule changes without approval. He testified that only Assistant Principal Elizabeth Woods and he could authorize schedule changes. A student asked Bowden to change her back to a lower reading class. Bowden did so on her own and did not inform Woods until afterwards.

D. “Not availing self in emergencies”

¶ 15. Ochenrider testified to a fight involving three female students. The students were brought into the office, where they tried to- continue the fight. Ochenri-der and Woods each held back two of the students. Woods directed Bowden to take the third student into her office. Bowden refused, because she had an appointment. After several minutes of debate, Bowden acquiesced.
¶ 16. Woods testified there were several occasions when she would have a student who required emergency counseling. When Woods asked Bowden to speak with the student, Bowden would refuse, saying her schedule would not permit it. She would insist on scheduling the student for a later appointment. It was only after persistent argument with Woods that Bow-den would go ahead and see the child.

E. Making parents wait to enroll students

¶ 17. Ochenrider testified to a particular instance where parents came in during the lunch hour to enroll students. Ochen-rider instructed Bowden to take care of it. Instead, she asked the school secretaries to do it, because she was on her way to lunch. Bowden did not have a particular lunch hour and was expected to make parents and students her priority. After eating her sandwich, Bowden returned and enrolled the students.
¶ 18. Despite this testimony, Bowden attempted to show that the Board’s decision was in retaliation for her racial discrimination claim which she had previously filed with the Equal Employment Opportunity Commission. After being fired from Lawrence County High School, in 1998, she filed this claim. As a settlement, the Board offered her the split position between New Hebron and Monticello, which she held for two years. Her predecessor likewise had to split the position between these two schools.
¶ 19. Although we may have decided this case differently, our review is not de novo. We are constrained to review the record for substantial evidence to support the Board’s decision. “Substantial evidence means more than a scintilla or a suspicion.” St. Dominic-Jackson, 910 So.2d 1077, 1081(¶ 13) (Miss.2005) (quoting Miss. State Dep’t of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977(¶ 12) (Miss.1999)). We find there was substantial evidence to support the Board’s decision not to renew Bowden’s contract. We are unable to say that the Board’s proffered reasons to terminate Bowden were a sham. On the whole, the evidence indicated that Bowden had difficulties in dealing with staff and trouble obtaining and releasing student records. She made changes in student schedules without approval. She also exhibited a reluctance to handle emergency situations involving the students’ physical and mental well being. Accordingly, we affirm.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF LAWRENCE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*493 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.