GRIFFIS, P. J.,
for the Court:
¶ 1. Walter Robey appeals the decision by the Cleveland School District Board of Trustees not to renew his employment contract as principal of East Side High School. Robey argues that the decision should be reversed because it was arbitrary and capricious, was not supported by substantial evidence, and was in violation of his constitutional and statutory rights. We find no error and affirm.
FACTS
¶ 2. In July 2008, Robey was employed by the Cleveland School District as principal of East Side High School. In February 2011, Robey was advised that the *232 Board would not renew his employment contract for the upcoming 2011-2012 school year.
¶ 3. Dr. Jackie Thigpen, the superintendent of the Cleveland School District, gave the Board five reasons for the recommendation: Robey’s failure to follow district policy regarding out-of-state travel, his failure to follow district policy regarding school-activity requests, his failure to follow district financial-procedures policy, his failure to meet the Adequate Yearly Progress (AYP) goals for his school, and the failure to maintain a clean learning environment.
¶ 4. As required by the Mississippi Education Employment Procedures Law (EEPL), the Board notified Robey of its decision in writing. Robey requested and was granted a hearing. At the hearing, Robey was represented by counsel. He testified along with four other witnesses. Several documents were offered into evidence. Thereafter, the Board upheld Thigpen’s nonrenewal recommendation.
¶ 5. On appeal to the chancery court, Robey challenged the Board’s decision. The chancellor affirmed the Board’s decision of nonrenewal. As to the procedural issues presented, the chancellor determined that any defects in providing the required notice, under Mississippi Code Annotated section 37-9-113(4) (Rev.2012), constituted “harmless error.” As to the substantive legal issues, the chancellor determined that the Board’s nonrenewal decision was supported by the evidence in the record. It is from this decision that Robey now appeals.
STANDARD OF REVIEW
¶6. When this Court reviews a decision by a chancery or circuit court concerning an agency action, we apply the same standard of review that the lower courts are bound to follow. Hinds Cnty. Dist. Bd. of Trs. v. R.B. ex rel. D.L.B., 10 So.3d 387, 394 (¶ 17) (Miss.2008). Further, Mississippi statutory law sets the standard of review of a school board’s decision not to renew an employment contract:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was: (a) Not supported by substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 37-9-113(3) (Rev.2012). Uncorroborated hearsay is not substantial credible evidence. Noxubee Cnty. Bd. of Educ. v. Givens, 481 So.2d 816, 820 (Miss.1985).
ANALYSIS
1. Whether the Board violated Robey’s statutory rights and his due-process rights.
¶7. Robey argues that the conduct of the Board in regard to his nonre-newal hearing was clearly erroneous and violated his statutory rights and his due-process rights. Particularly, Robey argues that the Board’s one-day delay in providing notice of his nonrenewal violated provisions of the EEPL.
¶ 8. Mississippi Code Annotated section 37-9-105(a) (Rev.2012) provides:
If a recommendation is made by the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreem-ployment stating the reasons for the proposed nonreemployment shall be given no later than the following:
If the employee is a principal, the superintendent, without further board *233 action, shall give notice of nonreem-ployment on or before March 1....
Also, Mississippi Code Annotated section 37-9-113(4) provides that “no relief shall be granted based upon a court’s finding of harmless error by the board in complying with the procedural requirements of [sections 37-9-101 to 37-9-113.” The supreme court has interpreted this provision as providing that any defects in the timeliness of notice and other procedural defects are harmless error when the school board makes a good-faith attempt to follow the applicable procedures. See Ford v. Holly Springs Sch. Dist., 665 So.2d 840, 845 (Miss.1995) (noted that a six-day delay in service would have been harmless procedural error excusable under section 37-9-113(4)); see also Cox v. Thomas, 403 So.2d 135, 137-38 (Miss.1981) (held that certain procedural defects can be excused where there is a “substantial and manifestly good faith attempt by the superintendent and the school board to comply with the law”).
¶ 9. This Court recently affirmed a school district’s employment-nonrenewal decision and found that the school board’s failure to comply with the EEPL when it did not permit the employee to give a closing statement after his hearing before a hearing officer constituted “harmless error.” Alexander v. Reeves, 90 So.3d 1273, 1281 (¶ 22) (Miss.Ct.App.2012). Because the plaintiff employee “was given ample notice of the charges against him, was represented by counsel, and was afforded a full opportunity to address [the charges] on the three separate hearing dates,” he suffered no prejudice, despite the procedural error, as “there was a ‘substantial and manifestly good faith attempt’ to comply with the statute.” Id.
¶ 10. Robey’s claim here is based on the contention that he did not personally receive his notiee-of-nonrenewal letter until March 2, one-day late. Thus, he argues that the Board’s actions were clearly erroneous and his nonrenewal decision should be reversed.
¶ 11. The record indicates that Thigpen prepared Robey’s nonrenewal letter on February 24. She planned to deliver it in person at East Side High School that day. However, Robey was not at school that day. After Thigpen realized Robey was out sick and would not return to work until March 1, she mailed the nonrenewal letter by certified mail to Robey on February 25. She also planned to deliver a copy personally to Thigpen when he returned to work on March 1, as he initially claimed he would.
¶ 12. When Robey failed to return to work on March 1, Thigpen sent a process server to deliver the letter to Robey’s home. The process server made several attempts to deliver the letter on March 1. Although Robey claimed he was home sick, no one answered the door at his house. The process server attempted to serve Ro-bey the next day, but his wife refused service. It was not until Robey’s wife went to the mailbox and accepted the certified letter that Robey actually received the letter.
¶ 13. We find that Thigpen’s efforts to serve Robey with the notice of nonrenewal constitute a substantial good-faith effort, and Robey was not prejudiced by the one-day delay. As a result, we conclude that the one-day delay was harmless error.
¶ 14. Robey further contends that the Board violated the EEPL when Thig-pen did not announce Robey’s nonrenewal decision at the Board’s February 14, 2011 meeting. Mississippi Code Annotated section 37-9-15 (Rev.2013) provides:
No later than February 15 of each year, the superintendent of each school district, or such other person designated or authorized by the school board, shall *234 recommend to the school board thereof the assistant superintendents and principals to be employed for each of the schools of the districts except in the case of those assistant superintendents and principals who have been previously employed and who have a contract valid for the ensuing scholastic year.
¶ 15. At the February 14, 2011 Board meeting, Thigpen neither stated affirmatively that Robey’s contract was renewed nor stated categorically that his employment would not be renewed. She described his employment status as pending.
¶ 16. Robey argues that because Thig-pen did not announce her decision to not renew his employment at that February 14 meeting, she violated his statutory rights. We disagree. Section 87-9-15 only required Thigpen submit to the Board a list of the principals that would be renewed. It does not require Thigpen to submit a list of employees who will not be renewed.
¶ 17. At the Board meeting, Thigpen announced Robey’s status as “pending,” and she stated that she had not yet made a decision to renew his employment. Thig-pen subsequently decided not to renew Robey’s employment and attempted to notify him of her nonrenewal decision before the statutorily required March 1 deadline. We find that the decision by the Board was proper and did not violate section 37-9-15.

2. Whether the Board’s decision was not supported by substantial evidence, was arbitrary and capricious, or violated Robey’s statutory or constitutional rights.

¶ 18. Next, Robey argues that the Board’s decision was arbitrary and capricious because the allegations against Ro-bey were untrue and not substantiated by the record. The Board replies that there was substantial evidence to support the reasons for nonrenewal.
¶ 19. The terms “arbitrary” and “capricious” imply “a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” St. Dominic-Jackson Mem’l Hosp. v. Miss. State Dep’t of Health, 910 So.2d 1077, 1082 (¶ 15) (Miss.2005) (quoting HTI Health Servs. of Miss., Inc. v. Miss. State Dep’t of Health, 603 So.2d 848, 851 (Miss.1992)). An arbitrary act is not done according to reason or judgment, but on will alone. Miss. Methodist Hosp. & Rehab. Ctr. v. Miss. Div. of Medicaid, 21 So.3d 600, 610 (¶ 25) (Miss.2009) (citation omitted). It is “absolute in power, tyrannical, despotic, non-rational[ ] — implying either a lack of understanding of or a disregard for the fundamental nature of things.” Id. Capricious means “freakish, fickle,” or “done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” Id. If the reasons for nonrenewal are a sham, or are in retaliation for the employee’s constitutionally protected activity, the Board has acted arbitrarily and capriciously. Claiborne Cnty. Bd. of Educ. v. Martin, 500 So.2d 981, 986 (Miss.1986). However, if the nonrenewal decision of the Board is “fairly debatable,” that is, if reasonable minds could debate the propriety of the Board’s decision for nonrenewal, then it is “the antithesis of arbitrary and capricious.” Rayner v. Barbour, 47 So.3d 128, 135 (¶ 19) (Miss.2010) (citations omitted).
¶ 20. Thigpen gave five reasons for the nonrenewal of Robey’s contract. She stated the reasons were due to Robey’s: (1) failure to follow district policy regarding out-of-state travel, (2) failure to follow district policy regarding school-activity requests, (3) failure to follow district finan *235 cial-procedures policy, (4) failure to meet the AYP goals for his school, and (5) failure to maintain a clean learning environment.

A. Failure to Follow Out-of-State Travel Policy

¶21. Thigpen testified at the nonre-newal hearing that Robey failed to obtain school-board approval for the boys’ basketball team to travel to Kentucky on December 13, 2010. The Board neither knew about nor consented to the trip. Thigpen testified that she was not even aware that the East Side High School basketball team was representing the school in another state until the team’s bus broke down on the side of the road on the way home.
¶ 22. Robey submitted a travel request for board approval after the trip. Three days later, Thigpen issued a written reprimand to Robey for his failure to obtain Board consent for the student trip. She attached to the letter the specific travel policy of the school district, which stated that student trips out of state require prior Board approval. The letter also referenced prior occasions where Robey violated this policy and failed to timely submit travel requests. Robey was reprimanded twice for his failures to timely submit requests for bus permits on March 2, 2010, and August 16, 2010.
¶23. Robey testified that the Board had to know about his out-of-state travel, because he provided a basketball schedule that included the Kentucky trip, even though he did not submit a formal travel request pursuant to stated district policy. Robey did not specify when the schedule was provided, nor did he submit evidence that the Board actually received a copy of the schedule. Robey also testified that Thigpen had to know about the trip because her nephew was on the basketball team. Lastly, he argued that a formal travel request, subject to Board approval, was unnecessary in this case because the trip was not paid for by the school. Robey provided no additional evidence to support his explanations. In fact, the Board policy for out-of-state travel was clear that all student trips had to be approved by the Board. .

B. Failure to Follow District Policy Regarding School Activity Requests

¶ 24. In addition to his two documented reprimands for failure to timely submit requests for bus permits, Thigpen testified that Robey signed a contract and scheduled two football games with Greenwood High School for 2011 and 2012, without getting the district’s approval. Robey claimed that the contract that scheduled the Greenwood High School games was signed by Thigpen; therefore, it was approved by the district.
¶ 25. Thigpen claimed that Robey ignored district policy when he permitted Chris Parks to serve as an assistant or part-time coach for the football team without either obtaining approval from the Board or making clear to Parks that he would not be paid. Parks went to the district office and made a demand for payment for his services as an assistant coach, even though his employment was not authorized by the Board. Robey claimed that the football coach and athletic director were responsible for making a recommendation to hire members of the coaching staff. He claimed that Parks, though he started out as a volunteer, wanted to be paid for his services and made a complaint to the district.
¶ 26. Finally, Thigpen testified that Ro-bey permitted janitors to operate a “store” that sold candy, chips, pickles, and miscellaneous food items in violation of the district policy on fundraising. The Board had the authority to approve all fundraising *236 activities, and all proceeds for school fund-raising must have been appropriately accounted for in the district’s business office. Robey did not deny these allegations. Instead, he claimed that the fundraising was initially for a janitor’s family member’s pageant, which then turned into a fundraiser for the science club.

C. Failure to Follow District Financial-Procedures Policy

¶ 27. Thigpen alleged that Robey violated district policy by an attempt to misuse federal funds to purchase jackets and other incentives for his staff. When he made the order, Robey identified the items being purchased as “student incentives,” which could be paid for by the school’s federal funds. This was the designation on the purchase order, despite the fact that the items ordered were specific to the faculty as to quantity, size, and monograms.
¶ 28. Just before the invoice was paid, Brenda Ellis, federal-funds coordinator for the district, discovered that the money was actually being used to buy jackets for staff members. Robey characterized the funding request as a mistake that he corrected once it was brought to his attention that the items could not be purchased with federal funds.

D. Failure to Meet the AYP Goals for His School

¶ 29. Thigpen testified that Robey failed to meet the AYP attendance goals for the 2010-2011 school year. Specifically, while Robey met the AYP state goal by reaching 93% attendance, he failed to meet the district goal of 95% attendance along with his own personal goal of 98% attendance.
¶ 30. Robey submitted a plan, which was approved by Thigpen, prior to the school year to improve attendance. The plan called for Robey to call absent students to encourage them to come to school, among other things. While Robey explained some of the actions he took to ensure regular school attendance, he provided no evidence or documentation that he took the actions specified in the plan to improve attendance.

E.Failure to Maintain a Clean Learning Environment

¶ 31. Thigpen alleged that Robey had difficulty keeping the school clean on a day-to-day basis. Thigpen gave credit to Robey for the work he had done to clean the school over the summer; however, she contended that her issue with Robey was his inability to keep the school clean on a daily basis.
¶ 32. Robey did not deny or offer evidence to the contrary. He argues that a photograph of the condition of one of the bathrooms in the school was taken only days before his nonrenewal hearing and, therefore, should have not been used as evidence of his inability to keep the school clean on a daily basis. The Mississippi Department of Education approved the cleanliness of the schools after Robey made improvements in the summer of 2010. However, Thigpen alleged that the school was not cleaned at multiple other times during Robey’s tenure and that was the basis of her decision for nonrenewal.
¶ 33. We note that the standard of review does not allow this Court to substitute our judgment for the judgment of the Board, as our standard of review is not de novo. Bowden v. Lawrence Cnty. Sch. Dist. 948 So.2d 487, 492 (¶ 19) (Miss.Ct.App.2007). Our limited standard of review constrains us to review the record for substantial evidence to support the Board’s decision. Id. “Substantial evidence means more than a scintilla or a suspicion.” St. Dominic-Jackson, 910 So.2d at 1081 (¶ 13) (quoting Miss. State Dep’t of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977 *237 (¶ 12) (Miss.1999)). Specifically, substantial evidence requires less than a preponderance of the evidence. Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266, 280-81 (Miss.1995).
¶ 34. We find there was substantial evidence to support the Board’s decision not to renew Robey’s contract. We are unable to say that the Board’s proffered reasons to terminate Robey were a sham. On the whole, the evidence indicated that Robey had difficulties in following district policy regarding out-of-state student travel requests, school activities, and financial management. He was unable to meet established attendance goals for the district. He failed to maintain a consistently clean and sanitary school environment. And Ro-bey made several policy decisions without the required Board approval. Therefore, we find that this issue has no merit.

3. Other Issues

¶ 35. In his brief, Robey also makes two separate claims of gender discrimination against the district. Essentially, he claims that the district’s treatment violated the Equal Protection Clause of the Fourteenth Amendment and Title VII. Robey argues that the Board chose to renew the contract of two female principals in the district who were “similarly situated” to him.
¶ 36. Robey did not raise these issues before the chancery court or the Board, during the nonrenewal hearing. Instead, Robey merely alleged that the Board’s decision was in retaliation for his gender-discrimination claims that he previously filed with the Equal Employment Opportunity Commission. We find that his failure to raise this issue at the trial level constitutes a waiver of this issue. Davis v. Estate of Tiblier, 107 So.3d 181, 184 (¶ 9) (Miss.Ct.App.2013) (citing Foster v. State, 716 So.2d 538, 540 (¶ 7) (Miss.1998)). We decline to address this issue.
¶ 37. Having considered the issues properly raised in this appeal, we find no error and affirm the judgment of the chancery court.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.