BARNES, J., for the Court:
¶ 1. Garry Alexander was terminated from his position as a health and physical education teacher at Hazlehurst Middle School. After hearings were conducted regarding his termination, James Reeves, the conservator for the Hazlehurst School District, upheld the decision on January 12, 2010. Alexander submitted an appeal to the Chancery Court of Copiah County, which affirmed the decision on September 29, 2010. On appeal, we find no error and affirm.
SUMMARY OF FACTS
¶ 2. Alexander was hired on June 25, 2005, to teach at the Hazlehurst School District’s middle school. In February 2009, Ken Acton, the principal for grades K through 8, recommended that Alexander be terminated from his position. The basis for the termination was neglect of duty, specifically his failure to supervise his classroom adequately and the failure to report an incident to the administrator regarding an assault on a student by other students. On February 17, 2009, Stanley Blackmon, the interim conservator for the school district, notified Alexander of his termination, effective February 20, 2009. Alexander requested, and was granted, a hearing. Shortly thereafter, James Reeves replaced Blackmon as conservator for the school district.
¶ 3. A hearing was conducted over the following dates: April 22, 2009, June 26, 2009, and December 2, 2009. Dorian Turner was the hearing officer. At the hearing, testimony was presented that Alexander had not been actively involved in his teaching duties, nor was he properly supervising his students. Acton testified that he had met with Alexander several times to discuss proper classroom supervi *1276 sion and had written a letter outlining these discussions. Acton stated: “The biggest safety issue was the lack of supervision in Coach Alexander’s room.” The four or five times Acton visited Alexander’s classroom, Alexander was “sitting each time at the desk basically doing nothing,” and the students were gathered in the hall or standing around the classroom. Although Acton directed the students back into the classroom, the students quickly resumed their previous activities. Acton also noted that he never received lesson plans from Alexander.
¶ 4. At the request of Blackmon and Acton, the assistant principal, Brendsha Roby, visited Alexander’s classroom on January 14 and January 16, 2009. On her first visit, Roby saw students running around the room, talking loudly. Alexander was seated at the desk grading papers, with students gathered around him, including one student who was copying answers down from the answer key. Roby instructed Alexander to stop grading papers and start class, and he passed out a worksheet to the class and returned to his seat. On the second visit, Roby saw the same thing: students around the classroom, talking in groups; Alexander grading papers at his desk and providing no instruction. Again, Roby told Alexander to give the students something to do. Alexander then began reading to the class from a binder. Her visits were documented by observation notes. Roby stated there were other times she saw Alexander teach, but the majority of times he was seated at the desk and “no instruction was going on whatsoever.” At the final hearing on December 2, 2009, Roby again testified, stating that she was present when Acton gave Alexander an improvement plan and that she observed Alexander at the direction of Blackmon and Acton. Roby stated that she did observations of other teachers and that some of them were later terminated. She again testified about her two written observations of Alexander and his classroom.
¶ 5. Patsy Livingston, an evaluator for the Mississippi Department of Education (MDE), testified that Alexander was a person of “high concern” and was known to have classroom difficulty. Livingston described Alexander’s classroom as disorderly, stating that it was often difficult to determine if Alexander was even in the classroom, as students were out of their seats and gathered around the room, thereby obstructing her view of Alexander’s desk. She said it was not unusual to find Alexander with his head on the desk and arms outstretched. Livingston acknowledged that other teachers had problems with classroom management but submitted that “nothing comes close” to the problems she saw in Alexander’s classroom. Livingston filled out a MDE “Teacher Performance Standards Monitoring Document,” giving Alexander “unsatisfactory” ratings in almost every category. Additionally, Debbie Childers, another MDE evaluator, wrote a letter to Acton dated February 11, 2009, expressing her concern about safety in Alexander’s classroom. Although she did not testify, Child-ers’s letter stated that she and other team members in classrooms across the hall from Alexander were often disturbed by noise coming from Alexander’s classroom. On six to eight separate occasions, they had to go across to Alexander’s class to investigate. On one of those occasions, Alexander told Childers, “Some of them are not my students. I can’t keep these kids in my room. They won’t sit down.”
¶ 6. Then, on February 12, 2009, an incident occurred on the playground involving *1277 the assault of a young female student who was supposed to be under Alexander’s supervision. Roby noticed the female child with a scratch on her face getting on a school bus. Roby stopped the school bus and called the nurse to treat the child’s injury. It was alleged that the fourth-grade girl had been assaulted on the playground where “boys were throwing the girls down and doing inappropriate things to them.” Acton and Roby questioned and obtained written statements from each of the students involved. The boys responsible were suspended. Although Alexander was not questioned, Acton concluded that the incident resulted from Alexander’s inadequate supervision. Acton testified that Alexander never reported the incident nor submitted any explanation about what happened. Joe Allen Mack Sr., the other teacher who allegedly was assigned to assist Alexander with supervision, testified that there were many assignment schedules and that he normally supervised the school’s gym, not the playground. Mack said he “spent very, very little time on the playground during the school year.” Mack was never asked about the incident but stated that he would have reported it if he had been involved or known about it.
¶ 7. Eileen Milner, a teacher mentor for the MDE, made an impromptu visit to Alexander’s classroom on February 17, 2009. Milner testified that she and another teacher were talking when they were interrupted by loud noise from Alexander’s classroom. When she entered the classroom, she saw students standing up, shouting, and some were even braiding each other’s hair. Alexander was reading a newspaper, and he stated to Milner that “the kids didn’t want to learn and he wasn’t going to try.” In a letter written to Acton on February 18, 2009, Milner stated: “There had not been one minute of instruction occurring during this class period.”
¶8. On the second day of the hearing, Dr. Samuel Magee, a former bureau director for MDE, testified on behalf of Alexander. Dr. Magee’s responses were based merely on the facts presented to him, as he had never worked with the Hazlehurst School District. Dr. Magee testified about teacher improvement plans and stated that “[fjailure to be specific in telling an employee what the expectations are would not be grounds for dismissal.” Dr. Magee also acknowledged: “Generally, you would have to establish a pattern of incidents, a pattern whereby you have worked with that individual and a pattern whereby that person either resisted your assistance or simply did not have the skills or ability to meet those expectations.” The school’s secretary, Anita Easterling, also testified favorably for Alexander, stating that he was “liked by the staff as well as the children.” However, she was unable to provide specific details regarding Alexander’s classroom situation. Connie Barnes, a teacher and school bus driver, stated that Alexander had disciplinary problems with students, but that they were comparable to those of other teachers.
¶ 9. On January 12, 2010, the conservator for the school district, Reeves, issued a final decision, upholding Alexander’s termination based on a finding that Alexander “failed to carry out his duties to adequately supervise his students” and “failed to turn in adequate lesson plans.” Alexander appealed the decision to the chancery court, which affirmed the ruling. On appeal, Alexander argues the conservator’s decision: (1) was beyond the authority of the conservator to make; (2) violated Alexander’s constitutional and statutory rights; and (8) was unsupported by substantial evidence and was arbitrary and capricious. Finding no error, we affirm the judgment of the chancery court, upholding Alexander’s termination.
*1278 DISCUSSION
I. Whether the conservator had the authority to issue the termination.
¶ 10. Alexander contends that neither of the two conservators, Blackmon and Reeves, established that they were validly appointed conservators with the authority to terminate Alexander. When informed that the hearing officer’s report was being prepared for the interim conservator, counsel for Alexander objected to the “decision being made by a conservator.” She stated: “The law says that it shall be made by the school board[.]” Alexander never challenged the validity of the appointments. Thus, citing Dampier v. Lawrence County School District, 344 So.2d 130, 131 (Miss.1977), the chancery court found that this issue was waived, as Alexander never argued at the termination hearing that Reeves was not a lawfully appointed conservator. “An appellate court is under no obligation to review an assignment of error when an objection was not made[.]” Dorrough v. Wilkes, 817 So.2d 567, 577 (¶ 33) (Miss.2002) (citation omitted). “[W]hen a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds.” Copeland v. Copeland, 904 So.2d 1066, 1073 (¶ 24) (Miss.2004) (citation omitted). Furthermore, as noted by the Appellees, it would have been easy to establish by substantial evidence that the conservators were validly appointed if there had been a request made at the hearing or prior to the appeal.
¶ 11. The procedural bar notwithstanding, we find nothing in the record to indicate that Blackmon and Reeves were not vested with the authority to act in this matter. Alexander is correct that, in a normal situation, the local school board reviews the record presented by the hearing officer and makes the decision to uphold or reject an employee’s termination. Mississippi Code Annotated section 37-9-59 (Rev.2007) provides that “the superintendent of schools” is vested with the authority to terminate an employee, and upon a request by the employee, the local school board shall conduct a hearing regarding the termination. The school board then reviews the record and determines “whether the proposed nonreem-ployment is a proper employment decision, is based upon a valid educational reason or noncompliance with school district personnel policies and is based solely upon the evidence presented at the hearing[.]” Miss.Code Ann. § 37-9-111(5) (Rev.2007).
¶ 12. However, at the time of Alexander’s termination, the Governor of Mississippi had declared a state of emergency in the Hazlehurst School District, and acting under the authority of Mississippi Code Annotated section 37 — 17—6(ll)(c)(iii) (Rev. 2007), had appointed an interim conservator to be “responsible for the administration, management, and operations of the school district.” Miss.Code Ann. § 37-17-6(14)(a) (Rev.2007). In essence, the conservator acts, for all intents and purposes, as the school board.
¶ 13. Section 37 — 17—6(14)(a)(i) provides that a conservator is to administer the management and operation of the school “including ... the employment, termination, nonrenewal and reassignment of all licensed and nonlicensed personnel^]” This includes all powers previously held by the school board. Miss.Code Ann. § 37-17-6(15). Additionally, the Attorney General’s Office has stated that a conservator may, “if circumstances warrant, ... initiate employment actions, request appointment of a hearing officer, and make final *1279 personnel decisions.” Miss. Att’y Gen. Op., 2000-0209, 2000 WL 688815, Thompson (Apr. 12, 2000). Alexander has cited no authority to the contrary, and nothing in the record casts doubt on the conservators’ lawful appointments or their decision-making authority.
¶ 14. Accordingly, we find no merit to the contention that the conservators were not lawfully appointed or lacked authority to act on Alexander’s termination.
II. Whether the conservator’s decision violated Alexander’s constitutional and statutory rights.
¶ 15. Alexander contends that a conservator could not recommend termination and also be responsible for the termination. In this case, Blackmon, the interim conservator, sent a letter notifying Alexander of the termination. After the termination, but before the hearing was held, Blackmon was replaced by Reeves as conservator of the Hazlehurst School District. Reeves upheld the termination after Alexander received a hearing. However, Alexander argues that he could not have been afforded a fair and unbiased hearing as required by law because Blackmon and Reeves were both MDE employees. Blackmon testified that he was “employed as an independent contractor with the State Department of Education as the conservator for the Hazelhurst City School District.” Reeves did not testify, but by inference, he was also employed by the MDE as a conservator.
¶ 16. We find that Alexander was not denied due process. There is a “presumption of honesty and integrity [afforded to] policymakers with decision[-]making power.” Dampier, 344 So.2d at 132.
The contention that the combination of investigation and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
Id. (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Alexander has not provided any evidence that he was harmed by having either of the conservators involved in his termination. Unlike the situation in the case cited by Alexander, Cantrell v. Vickers, 495 F.Supp. 195 (N.D.Miss.1980), Alexander received a hearing after being given written notice of the specific reasons for his termination. Furthermore, Acton was the individual who made the initial recommendation for termination. Black-mon merely sent the notice of termination, and Reeves made the final ruling to uphold the decision to terminate after three hearings had been conducted.
¶ 17. Alexander also claims that he was denied his right to make final statement before the conservator. After receiving notice of his termination, Alexander requested and received a hearing pursuant to section 37-9-111; he was represented by counsel. A hearing was conducted on three separate dates between April 2009 and December 2009. However, Alexander did not testify at any of the hearing dates. It was not until January 7, 2010, that Alexander requested permission *1280 to give a final statement before the conservator. However, the conservator issued an order upholding the termination on January 12, 2010, presumably not aware of Alexander’s request. The school district’s counsel subsequently responded to Alexander’s request by letter dated January 18, 2010, agreeing to the request to make a statement. Thus, Alexander argues that his statutory and due-process rights were violated since he was not given the opportunity to make a statement before the final decision was made.
¶ 18. At the conclusion of the final hearing on December 2, 2009, counsel for Alexander addressed the issue of whether he would be allowed to make a final statement:
MS. ROSS: Now, do we get a chance to appear before [the conservator] like we would appear before the school board?
THE HEARING OFFICER: I would assume so, yes.
MR. ARMISTEAD: Yes, you do, to make a final statement before him, either you or your client, you on his behalf, and we can do that at your leisure because we don’t have to get five people involved.
[[Image here]]
THE HEARING OFFICER: ... Then it will be up to y’all to schedule when Mr. Alexander will go before the conservator for a decision.
Therefore, there was an expectation that Alexander, or his counsel, would want to make a final statement before the conservator ruled.
¶ 19. Section 37-9-111(5) states:
The board shall review the matters presented before it, or, if the hearing is conducted by a hearing officer, the report of the hearing officer, if any, the record of the proceedings and, based solely thereon, conclude whether the proposed nonreemployment is a proper employment decision, is based upon a valid educational reason or noncompliance with school district personnel policies and is based solely upon the evidence presented at the hearing, and shall notify the employee in writing of its final decision and reasons therefor. Such notification shall be within thirty (30) days of the conclusion of the hearing if the hearing is conducted by a hearing officer and within ten (10) days of the conclusion of the hearing if the hearing is initially conducted by the board. If the matter is heard before a hearing officer, the board shall also grant the employee the opportunity to appear before the board to present a statement in his own behalf, either in person or by his attorney, prior to a final decision by the board.
(Emphasis added). However, Mississippi Code Annotated section 37-9-113(4) (Rev. 2007), which concerns an employee’s right to appeal a school board decision, states:
No relief shall be granted based upon a court’s finding of harmless error by the ■board in complying with the procedural requirements of sections 37-9-101 to 37-9-113. However, in the event that there is a finding of prejudicial error in the proceedings, the cause shall be remanded for a rehearing consistent with the findings of the court.
The chancery court, citing Cox v. Thomas, 403 So.2d 135 (Miss.1981), and Noxubee County Board of Education v. Overton, 483 So.2d 301 (Miss.1985), found that preventing Alexander from making a final statement constituted “harmless error” and “was not prejudicial in effect.”
*1281 ¶ 20. Alexander argues that Cox and Overton are not applicable. In Cox, a music teacher, Evelyn Thomas, was not recommended by the superintendent for contract renewal. Thomas was afforded a hearing, although she did not request one, and the nonrenewal of her contract was affirmed. She never appealed the decision; rather she filed a complaint in chancery court. Cox, 403 So.2d at 136. The chancellor ruled against the school district for its failure to allow Thomas “an opportunity to appear before the school board on her own behalf, either in person or by her attorney, prior to the decision by the board.” Id. at 137. The supreme court found that the chancery court did not have jurisdiction over the action, but also noted that Thomas was represented by an attorney and that any deficiencies in this procedural matter “could very quickly have been abated upon request by Mrs. Thomas or her attorney.” Id. The supreme court further stated: “While there may have been some procedural defects on the part of the board under the act, there was a substantial and manifestly good faith attempt by the superintendent and the school board to comply with the law.” Id. at 137-38.
¶ 21. Similarly, in Overton, the Noxub-ee County Board of Education notified Carolyn Overton, a teacher, that her contract would not be renewed. Overton, 483 So.2d at 302. Three hearings were rescheduled “by mutual agreement.” Id. After a hearing was finally held a few months later, Overton was informed her contract would not be renewed. On appeal, the chancery court reversed the board’s decision, citing the failure to conduct “a hearing within thirty (30) days of the date of her request” under the requirements of section 37-9-111. Overton, 483 So.2d at 302. The supreme court reversed the chancellor’s ruling, finding the procedural defect to be “harmless error,” as Overton was given the required statutory notice of non-reemployment. Id. at 303-04.
¶ 22. Admittedly the school district’s failure to allow Alexander an opportunity to give a final statement prior to the conservator’s final decision was not in accordance with the requirements of section 37-9-111(5). However, Alexander was given ample notice of the charges against him, was represented by counsel, and was afforded a full opportunity to address them on the three separate hearing dates. Thus, we find that there was a “substantial and manifestly good faith attempt” to comply with the statute, and we uphold the chancellor’s ruling that this procedural defect constituted harmless error.
III. Whether the decision to terminate Alexander was supported by substantial evidence.
¶ 23. An appeal from the decision of an administrative agency is limited. Mainstream Sav. & Loan Ass’n v. Washington Fed. Sav. & Loan Ass’n, 325 So.2d 902, 903 (Miss.1976). In the review of a decision of an administrative agency, we will determine whether the order of the administrative agency: “(1) was supported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated some statutory or constitutional right of the complaining party.” Id. “If the agency’s decision is found not to be based on substantial evidence, then it is considered ‘arbitrary and capricious.’ ” Pub. Employees’ Ret. Sys. v. McDonnell, 70 So.3d 264, 267 (¶ 7) (Miss.Ct.App.2011) (citing Wright v. Pub. Employees’ Ret. Sys., 24 So.3d 382, 386 (¶ 17) (Miss.Ct.App. 2009)). The Mississippi Supreme Court has held:
*1282 Pursuant to Mississippi] Code Annotated section] 37-9-113(3) (1990), the chancery court is directed to review the entire record to determine whether a school board’s decision “is unlawful because it is not supported by any substantial evidence and/or is arbitrary or capricious.” This Court employs the same standard of review when a school board decision is appealed from chancery court pursuant to Mississippi] Code Annotated section] 37-9-113(5).
Byrd v. Greene County Sch. Dist., 633 So.2d 1018, 1022 (Miss.1994) (internal citations omitted). However, in ABC Manufacturing Corp. v. Doyle, 749 So.2d 43, 45 (¶ 10) (Miss.1999), the supreme court held that, “[generally, an administrative agency is accorded deference, but when the agency has misapprehended a controlling legal principle, no deference is due, and our review is de novo.” (Citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1125 (Miss.1992)).
¶ 24. Section 37-9-59 provides that a teacher may be terminated by a school district “[f]or incompetence, neglect of duty, immortal conduct, intemperance, brutal treatment of a pupil or other good eause[.]” However, before the employee’s dismissal or suspension, he “shall be notified of the charges against him[,] and he shall be advised that he is entitled to a public hearing upon said charges.” Id. Alexander was advised that his termination was based on neglect of duty, specifically: (1) his failure to supervise his classroom adequately and (2) his failure to report the playground incident involving students to the administrator.
¶ 25. As already discussed, there was abundant testimony at the hearings by Acton, Roby, Milner, and Livingston regarding the disruptiveness of Alexander’s pupils and his inadequate supervision of the classroom. Furthermore, although Alexander argues that another teacher should have been assisting him on the playground, there was no indication that Alexander would have acted differently if Mack had been present. Acton testified that Mack had other assigned duties. Acton also noted in the incident report that Alexander told the boys to stop bothering the female student, but after they resumed their misconduct, Alexander “did not do anything in the situation.”
¶ 26. Alexander also attempted to counter the evidence of his classroom teaching and supervision with testimony regarding lack of teaching materials and allegations that he was treated more harshly than other teachers who were having similar issues. However, there was testimony that it was possible to teach health without a textbook. Livingston testified that “[t]he curriculum is what we are trying to teach” and that a textbook was “the least of our tools in most courses.” Furthermore, Acton made clear, as did Roby, that the other teachers were terminated or chose not to return. There was no testimony that other similarly situated teachers were treated differently. Additionally, Livingston testified that Alexander’s classroom management was far “more troubling” than that of other teachers, stating that “[n]othing comes close” to it. She added: “His were safety issues, kids pushing, running, pulling desks, that kind of thing. It’s a really an out of control classroom.”
¶ 27. The record shows that there was a rational and factual basis for Alexander’s termination and no indication that the decision was based on improper criteria. It is evident why the decision was made, and the facts presented at the hearing clearly *1283 support the decision. Therefore, we find that there was sufficient evidence to support the decision to terminate Alexander.
¶ 28. THE JUDGMENT OF THE CO-PIAH COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.